Marla K. KAIN;  Thomas Kain,
Plaintiffs–Appellants,

v.

Gary L. NESBITT (97–1210);  Michael
Powell (97–2068), Defendants–
Appellees.

Nos. 97–1210, 97–2068.

United States Court of Appeals,
Sixth Circuit.

Argued April 23, 1998.

Decided Sept. 18, 1998.

Jerry R. Swift (argued and briefed),
Eames Wilcox, Detroit, MI, for Marla Kain.

Jerry R. Swift, Detroit, MI, for Thomas Kain.

Mark S. Meadows (argued and briefed), Office of the Attorney General, Tort Defense Division, Nancy L. Scott, Office of the Attorney General, Tort Defense Division, Lansing, MI, for Defendants–Appellees.

Before: GUY, RYAN, and DAUGHTREY, Circuit Judges.

## OPINION

RALPH B. GUY, JR., Circuit Judge.

Plaintiffs, Marla and Thomas Kain, appeal the summary judgment granted in favor of the defendants in these civil rights actions filed pursuant to 42 U.S.C. § 1983. Plaintiff Marla Kain was injured when two state troopers forcibly entered her dwelling in pursuit of her son, who was wanted on a misdemeanor warrant. She sued, alleging her constitutional rights were violated as a result of the officers' unlawful entry and excessive use of force. Based upon our review of the record, we conclude the district court properly granted summary judgment in favor of Officer Michael Powell. The court also correctly granted summary judgment to Officer Nesbitt on the illegal entry claim. The court erred, however, in granting summary judgment on the excessive force claim, since there were disputed questions as to material facts that the court improperly resolved. Consequently, we affirm in part and reverse in part.

## I.

On February 5, 1995, Michigan State Troopers, Gary Nesbitt and Michael Powell, were dispatched to the residence of Eric Kain, age 19, to arrest him on a three-count misdemeanor warrant for drag racing, reckless driving, and fleeing and eluding a police officer. Upon arrival at the Kain residence, which was owned by the plaintiffs, Marla and Thomas Kain, the officers observed Eric Kain sitting in an automobile in the driveway. Officer Nesbitt exited the marked state police car and approached Eric. Eric, however, left his car and proceeded quickly up the driveway, through the garage, and into the house, shutting the door behind him. Officer Nesbitt called out to Eric and asked him to stop, but he did not. Officer Powell then exited the vehicle and "rapidly proceeded into the garage area."

Officer Nesbitt knocked on the door. Eric's mother, the plaintiff, Marla Kain, opened the door. According to plaintiff, she encountered a man "dressed in what appeared to be a Michigan State Police uniform." Allegedly, Officer Nesbitt did not verbally identify himself at the time. He asked to come in, but Marla refused. He then asked if he could talk with her and she agreed. The officer asked if Eric Kain lived there. She responded that she was his mother. Officer Nesbitt then asked if her son had been the person who had entered the house moments earlier and Marla indicated that he was. Plaintiff maintains that at that point the officer opened the door to the house and entered. In her affidavit, plaintiff stated that Officer Nesbitt

> violently and forcefully struck me in the chest and lower neck area with his right hand. He simultaneously violently and forcefully grabbed me by the neck and my right arm. I was violently and forcefully pushed backwards into the wall, injuring my back. The unprovoked violence sufficiently frightened me to the point I urinated. I struggled to free myself from the choking hold and asked the trooper if he had a warrant. Trooper Nesbitt at that point screamed "I have a f——g warrant", although he never showed me anything at anytime that purported to be a warrant.[1]

Nesbitt then proceeded inside to the rear of the home and arrested Eric. Nesbitt also told Powell to handcuff and arrest Marla, but Powell did not do so. Subsequently, the Kains filed this action against Officer Nesbitt. In addition to alleging various state law causes of action, they alleged that the manner in which Officer Nesbitt entered the

---

1. Officer Nesbitt admits that as he entered he pushed Marla away from him, but he claims she first grabbed his clothing in the shoulder area.

home and the force he used violated Marla Kain's constitutional rights under the Fourth Amendment. Thomas Kain brought a derivative claim for loss of consortium.

In response to the complaint, Nesbitt filed a motion for summary judgment alleging, inter alia, that plaintiff's § 1983 claim failed to state a claim upon which relief could be granted and that he was entitled to qualified immunity. In support, he attached his affidavit. Plaintiffs filed a response opposing defendant's motion and a proposed amended complaint. The response included an affidavit from Marla Kain. Nesbitt filed a supplemental brief in support of his motion, attaching an affidavit of Trooper Michael Powell. The court held a hearing on Nesbitt's motion and subsequently issued an opinion and order allowing the filing of the amended complaint, but granting the motion.[2] The court found that Nesbitt was entitled to summary judgment on the unlawful entry claim on the grounds that the entry was made in "hot pursuit" of Eric or to prevent Eric's escape. The excessive force claim was decided in favor of Nesbitt because the court found that the officer had acted reasonably in response to what he found to be Marla's interference with Officer Nesbitt's "discharge of his duty." Plaintiffs filed a motion for reconsideration, which was denied. This appeal followed.

Shortly before appealing in *Nesbitt*, plaintiffs filed a separate civil rights action against Michael Powell in his individual capacity alleging unlawful entry and use of excessive force.[3] In his affidavit filed in *Nesbitt* and incorporated by reference in the *Powell* action, Powell stated that he had pushed Officer Nesbitt and Marla into the home during the struggle between the two. Powell filed a motion for summary judgment, attaching the record submitted in *Nesbitt*. The district court granted the motion, incorporating by reference its opinion in *Nesbitt*. It further held that given plaintiffs had alleged in *Nesbitt* that Trooper Nesbitt had caused Marla's injury, the record did not support a claim that Trooper Powell injured

her. Plaintiffs also appealed that decision, and the cases were consolidated for the purposes of appeal.

## II.

This court reviews a district court's grant of summary judgment de novo. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987). Summary judgment is appropriate "[w]here the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see* Fed.R.Civ.P. 56(c). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). *McKee v. Cutter Labs., Inc.*, 866 F.2d 219, 220 (6th Cir.1989).

In granting summary judgment to Officer Nesbitt, the court found the officer protected by the doctrine of qualified immunity as to both the illegal entry and excessive force claims asserted by Marla Kain. Before analyzing these rulings, we first set forth some general observations on the sometimes confusing doctrine of qualified immunity.

When making a qualified immunity analysis, it is important to remember that the defendant is, in essence, saying: "If the plaintiff's version is credited, what I did, judged *today, arguendo* would be wrongful, but at the time I acted, no reasonable officer would have known he was acting wrongfully." *See Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir.1998) ("the defendant must be pre-

---

**2.** The record before the court also included an affidavit of Eric Kain, although it is not clear at what point prior to the court's opinion this was submitted.

**3.** At oral argument plaintiffs stipulated that they are only asserting a claim of unlawful entry against Officer Nesbitt, not Officer Powell.

pared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the plaintiff's case"). If an officer committed no wrong, then qualified immunity is not implicated. Defendants often reply to suits of this nature by seeking dismissal or summary judgment. The summary judgment request often asserts qualified immunity as *one* basis for granting the motion. If the defendant's motion is granted on *any* of the grounds asserted, the plaintiff has an immediate right of appeal. If the motion is denied, however, the defendant may appeal *only* as to the qualified immunity issue. *Johnson v. Jones,* 515 U.S. 304, 319, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). It is for this reason that the analytical compartments must be kept relatively watertight and the trial court in its rulings must differentiate between the various theories advanced by the defendant for dismissal.

An illustration may be helpful. If a plaintiff in a § 1983 action alleges she was the victim of the use of excessive force by the police, this would be adequate initially under a notice pleading analysis to state a claim. If the defendant responded by making a claim of qualified immunity, then, at this point, plaintiff's complaint does not meet the heightened pleading requirement we enunciated in *Veney v. Hogan,* 70 F.3d 917 (6th Cir.1995).[4]

If plaintiff were to then amend by saying that the excessive force consisted of handcuffing her in connection with an arrest, the claim would fail because it would be apparent on its face that no constitutional violation had been pleaded. In such an instance the claim would be subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure or summary judgment. It would not be necessary to make a qualified immunity analysis. If, however, the plaintiff were to amend and state the excessive force consisted of the defendant intentionally and maliciously handcuffing her so tightly that she

lost circulation in both her wrists and suffered physical injury, then the qualified immunity analysis would have to be made. Part of the analysis would be a determination as to whether there were any genuinely disputed questions involving material facts. It would matter not, for example, that the officer denied handcuffing her tightly. This would merely generate a genuinely disputed question of fact, which is for the trier of fact to resolve, not the judge. This would be true notwithstanding that the trial judge found the officer to be more credible than the plaintiff, because it is not for the court to make credibility determinations at this stage of the proceeding.[5]

■ With this as background then, we first address plaintiff's illegal entry claim, restating the relevant facts. The officers were in the course of executing a warrant for the arrest of Eric Kain. They found Eric Kain sitting in a car parked in front of his house. As Officer Nesbitt exited his parked car, Eric Kain got out of his car and hurriedly entered the open door of the attached garage and then entered the house. Although Officer Nesbitt yelled at Eric to stop, he refused to do so. Nesbitt then entered the garage and knocked on the door leading to the house. Plaintiff Marla Kain partially opened the door in response to the knock. Nesbitt asked if he could come in, but permission was refused. Nesbitt then asked if he could talk with her and she agreed. The officer next asked if Eric Kain lived there and plaintiff responded that she was Eric's mother. Nesbitt then confirmed with plaintiff that it was Eric who had just entered the house.

In our view, at this point Officer Nesbitt had a right to enter and arrest Eric. Nesbitt knew the person named in the warrant was in the house and that person had refused to voluntarily surrender himself. He had knocked on the door, which was voluntarily opened, and talked with Eric's moth-

---

**4.** This is not to be confused with a heightened proof requirement which was condemned by the Supreme Court in *Crawford–El v. Britton,* —— U.S. ——, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

**5.** The confusion in this area is generated in part by carrying over an absolute immunity construct

into a qualified immunity analysis. When an official is cloaked with absolute immunity, it matters not what he did, when he did it or what the state of the law was then and now. Such is not the case with qualified immunity.

er. The fact he was a police officer was apparent to the plaintiff. Officer Nesbitt did not need the express permission of the plaintiff to execute the warrant. Since no improper entry was made, summary judgment was appropriate as to this claim without the necessity of relying on a qualified immunity analysis.

 We turn now to the excessive force claim. If plaintiff's version as to the nature and degree of force used is credited, which the district court failed to do, a jury question is created as to whether the force used was excessive.[6] The law as to excessive force has been long-settled, and Officer Nesbitt may not advance a claim that he did not know the force he could use must be reasonable. What Officer Nesbitt argues, in essence, is that the degree of force he used was objectively reasonable. However, where the force used and the manner in which it was used is as plaintiff alleges here, the issue of reasonableness is a fact question, not a legal issue to be decided by the court. We would emphasize that we are not concluding that every excessive force claim creates a jury issue. We reference the example given earlier where the only excessive force claimed was being handcuffed in the course of an arrest. Such an allegation does not state a claim on which relief can be granted.

We also note that this does not leave defendants at the mercy of vague generalized pleadings. As the Supreme Court recently noted in *Crawford–El*, a trial court may require that "the plaintiff 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." —— U.S. at ——, 118 S.Ct. at 1596 (quoting *Siegert v. Gilley*, 500 U.S. 226, 236, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (Kennedy, J., concurring in judgment)).

**AFFIRMED,** except as to the granting of summary judgment on plaintiff's excessive force claim against Officer Nesbitt, which is

**REVERSED** and **REMANDED** for further proceedings.

---

6. Qualified immunity claims are usually made in defendant's first responsive pleading, often before discovery is started, and almost always before discovery is completed. Even after a qualified immunity claim is denied and discovery is completed, it may be appropriate for the trial judge to grant a summary judgment motion on grounds other than qualified immunity.