under 28 U.S.C. § 1367 if it chooses to do so. *See Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1230 (6th Cir. 1997). We note in passing some ambiguity in the district court's opinion with respect to defendant City of Worthington. The district court first determined that "[t]he city and the school district are . . . immune from liability on the state law claims," but went on to state that "because a reasonable jury could find the actions of Sergeant Murphy and Mr. Cynkar were not reasonable or necessary under the circumstances, Defendants Cynkar and the Worthington City School District are not entitled to summary judgment on this [corporal punishment] claim." Memorandum and Order at 23, 25. Although we assume that summary judgment has been granted to the school district, the district court will have an opportunity on remand to resolve any confusion respecting the resolution of plaintiffs' state law claims.

The district court's denial of qualified immunity to defendants Murphy and Cynkar is **reversed** and the cause **remanded** for further proceedings consistent with this opinion.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0236P (6th Cir.)
File Name: 01a0236p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

JONATHAN NEAGUE, by his
mother and next friend Carol
Neague; CAROL NEAGUE;
JOHN NEAGUE,
        *Plaintiffs-Appellees,*

        *v.*

PAUL CYNKAR;
WORTHINGTON CITY SCHOOL
DISTRICT; WORTHINGTON
CITY SCHOOL DISTRICT
BOARD OF EDUCATION
(99-4552); DANIEL MURPHY;
CITY OF WORTHINGTON
(99-4533),
        *Defendants-Appellants.*

Nos. 99-4533/4552

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 95-00555—John D. Holschuh, District Judge.

Argued: May 1, 2001

Decided and Filed: July 25, 2001

Before:  NORRIS and SILER, Circuit Judges; STEEH,
District Judge.*

———————————

**COUNSEL**

**ARGUED:**  Steven Lee Smith, SMITH & COLNER,
Columbus, Ohio, John C. Albert, CRABBE, BROWN,
JONES, POTTS & SCHMIDT, Columbus, Ohio, for
Appellants.   John W. Leibold, Columbus, Ohio, for
Appellees.  **ON BRIEF:**  Steven Lee Smith, SMITH &
COLNER, Columbus, Ohio, John C. Albert, CRABBE,
BROWN, JONES, POTTS & SCHMIDT, Columbus, Ohio,
for Appellants.   John W. Leibold, Columbus, Ohio, for
Appellees.

———————————

**OPINION**

———————————

ALAN E. NORRIS, Circuit Judge.  Defendants Paul
Cynkar and Daniel Murphy appeal from the partial denial of
their motions for summary judgment.  Specifically, these
defendants take issue with the district court's conclusion that
they were not entitled to qualified immunity with respect to
plaintiff Jonathan Neague's allegation that they deprived him
of his Fourth Amendment right to be free from excessive
force.   For the reasons that follow, we hold that the
undisputed facts fail to support a claim of excessive force as
a matter of law and that the defendants are therefore entitled
to qualified immunity.

At the time that the dispiriting events that gave rise to this
suit occurred, Jonathan Neague was a seventh grader at
Worthingway Middle School.  He was involved in two fights

———————————

*The Honorable George Caram Steeh, United States District Judge
for the Eastern District of Michigan, sitting by designation.

under arrest, use of handcuffs alone cannot amount to
excessive force") (footnote omitted); *cf. Atwater v. City of
Lago Vista*, 121 S. Ct. 1536 (2001) (warrantless arrest,
including handcuffing, for minor criminal offense does not
violate Fourth Amendment).  In *Kain*, a case that involved a
policeman who had allegedly grabbed a suspect's mother by
the neck and pushed her against the wall, we provided the
following analysis of the doctrine of qualified immunity:

If . . . the excessive force consisted of handcuffing her
in connection with an arrest, the claim would fail because
it would be apparent on its face that no constitutional
violation had been pleaded.  In such an instance the claim
would be subject to dismissal under Rule 12(b)(6) of the
Federal Rules of Civil Procedure or summary judgment.
It would not be necessary to make a qualified immunity
analysis.  If, however, the plaintiff were to amend and
state the excessive force consisted of the defendant
intentionally and maliciously handcuffing her so tightly
that she lost circulation in both her wrists and suffered
physical injury, then the qualified immunity analysis
would have to be made.

*Kain*, 156 F.3d at 672.  We now make explicit what this court
in *Kain* implied: when there is no allegation of physical
injury, the handcuffing of an individual incident to a lawful
arrest[2] is insufficient as a matter of law to state a claim of
excessive force under the Fourth Amendment.  The threshold
inquiry in a qualified immunity inquiry is whether a plaintiff
has stated a valid constitutional claim. *Turner v. Scott*, 119
F.3d 425, 429 (6th Cir. 1997).  Under the undisputed facts of
this case, the answer to that inquiry is no.  Accordingly,
defendants Murphy and Cynkar are entitled to qualified
immunity.

With respect to the state law claims, on remand the district
court has the discretion to exercise supplemental jurisdiction

———————————

[2]In this case, the district court held that Jonathan's arrest was lawful;
that decision is not now before us.

247 F.3d 633, 640-41 (6th Cir. 2001) (same). We recently explained how to determine whether an officer was "objectively reasonable" in these terms:

> . . . In determining whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable. Because this is a test of objective reasonableness, the underlying motivations of the officer in making the arrest should not be examined.
>
> In determining whether an officer's actions were reasonable, the specific facts of each case are key. Courts should pay particular attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." While courts must look to the totality of the circumstances in determining whether a seizure was reasonable, they must be sure to view those facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Id.* at 639 (citations to *Graham v. Connor* omitted).

Plaintiffs do not allege physical injury from the handcuffing, which lasted at most thirty-three minutes; the police loosened the cuffs when Jonathan so requested. In fact, Carol Neague agreed in her deposition that she was "not claiming any physical injury to Jonathan as a result of the handcuffing."

This court's opinion in *Kain v. Nesbitt*, 156 F.3d 669 (6th Cir. 1998), supports our view that the handcuffing of a person in the course of an otherwise lawful arrest fails, as a matter of law, to state a claim for excessive force. *See also Palshook v. Jarrett*, 120 F. Supp. 2d 641, 656 (N.D. Ohio 2000) ("Insofar as [plaintiff's] claim rests entirely on the fact that he was handcuffed [to a bench in a holding cell] . . . there is no cause of action for excessive force. It may be true that it was unnecessary . . . but in the context of placing an individual

at school, for which he was required to attend detention on three Saturdays. On May 12, 1995, the principal of the school, defendant Cynkar, called Jonathan into his office and asked him if he was aware of a letter from his mother, Carol Neague, objecting to the Saturday detentions. Jonathan said he wanted to call his parents, but the principal replied that he had already tried unsuccessfully to reach them. Although the succession of events is not necessarily clear, Jonathan agrees that the following things happened: the principal told Jonathan to sit down; Jonathan replied that the principal was a "faggot" and "F-you." When the principal said he was going to tape record the meeting, Jonathan knocked the tape recorder out of his hands, ducked under the principal's arm, and ran out of the office.

Principal Cynkar had his secretary call 911; in the meantime, Jonathan went to the cafeteria and resumed eating his lunch, which had been interrupted by the principal's summons. When the police arrived, Principal Cynkar told them what had happened, including an alleged "chest-butting" by Jonathan. The police officers proceeded to the cafeteria with Principal Cynkar, who asked Jonathan to come to the office. When this request went unheeded, Officer Kim Hurst said, "Come on Jonathan, let's go," whereupon Jonathan stepped on her foot and walked quickly out of the cafeteria. As Jonathan passed Sergeant Murphy, Murphy took his arm and held it behind Jonathan's back.

When the group reached the principal's office, Sergeant Murphy asked Principal Cynkar if he should handcuff Jonathan; Cynkar said yes, and the sergeant did so. Sergeant Murphy stated that he was afraid Jonathan might assault the principal again. According to Jonathan, the handcuffs stayed on for thirty-three minutes; he struggled a bit while handcuffed; and he asked the police to loosen the cuffs, which they did. Jonathan's parents arrived shortly thereafter, and Principal Cynkar, who did not press criminal charges, suspended Jonathan for ten days.

Jonathan's parents appealed the suspension and, after a hearing, the suspension was reduced to eight days. The Neagues appealed the decision to the Franklin County Court of Common Pleas, which found for the defendants.

Plaintiffs filed suit against the defendants in federal court on June 2, 1995. Their second amended complaint alleged that defendants violated Jonathan's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments; that the defendants inflicted severe emotional distress; that they committed assault and battery; that "the intentional restraint of freedom . . . was done with indifference to . . . the statutory civil rights of Plaintiff"; and that the school district failed to adequately train and supervise principal Cynkar.

Because the proceedings in the district court have not been terminated by the issuance of a final order, our jurisdiction is limited to the consideration of whether defendants Cynkar and Murphy were entitled to qualified immunity on plaintiffs' Fourth Amendment claim of excessive force. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding "that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment"). Furthermore, a defendant may not appeal a summary judgment order on a qualified immunity claim "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 320 (1995). In this case, the district court identified a factual determination that must be resolved by a jury: whether it was reasonable for Sergeant Murphy to handcuff Jonathan under the circumstances. While the existence of a genuine issue of material fact typically precludes appeal, the undisputed facts support a finding of qualified immunity as a matter of law and therefore review by this court is

appropriate.[1] As this court has noted, the district court's reasoning that there was an issue of fact does not immunize issues of law underlying the qualified immunity analysis. *See Sanderfer v. Nichols*, 62 F.3d 151, 153 n.2 (6th Cir. 1995) (*Johnson v. Jones* did not bar review of the case, even though the district court phrased its denial of qualified immunity in terms of the evidence supporting plaintiff's claim, because plaintiff's version of events did not state a claim for a constitutional violation).

Government officials in civil cases are protected from liability if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that his or her conduct violates that right." *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). To be clearly established, a right must have been decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged violation occurred. *Id.*

This court has held that the right to be free from excessive force is a clearly established Fourth Amendment right. *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993). As the district court recognized, such claims turn on whether the officer's actions were "objectively reasonable." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). Moreover, a viable excessive force claim can be premised upon handcuffing. *Id.* (excessive force claim can be premised upon handcuffing if officer knew plaintiff had an injured arm and also knew plaintiff posed no threat); *see also Martin v. Heideman*, 106 F.3d 1308, 1312-13 (6th Cir. 1997) (overly tight application of handcuffs despite protestations of plaintiff can state excessive force claim); *Kostrzewa v. City of Troy*,

---

[1] "We review the denial of summary judgment on grounds of qualified immunity de novo because application of this doctrine is a question of law." *McCloud v. Testa*, 97 F.3d 1536, 1541 (6th Cir. 1996) (citing *Mumford v. Zieba*, 4 F.3d 429, 432 (6th Cir. 1993)).