RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0128P (6th Cir.)
File Name: 01a0128p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CHARLES KOSTRZEWA,
    *Plaintiff-Appellant*,

    *v.*

CITY OF TROY, et al.,
    *Defendants-Appellees*.

No. 00-1037

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-70590—Paul D. Borman, District Judge.

Argued: March 9, 2001

Decided and Filed: April 23, 2001

Before: SILER, MOORE, and CLAY, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Kevin S. Ernst, Detroit, Michigan, for Appellant. Lori Grigg Bluhm, OFFICE OF CITY ATTORNEY, Troy, Michigan, for Appellees. **ON BRIEF:** Kevin S. Ernst, Detroit, Michigan, for Appellant. Lori Grigg Bluhm, OFFICE OF CITY ATTORNEY, Troy, Michigan, for Appellees.

1

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  Plaintiff-Appellant Charles Kostrzewa ("Kostrzewa" or "plaintiff") appeals the district court's decision dismissing 1) his excessive force claims against the City of Troy, Michigan and two of its police officers, brought pursuant to 42 U.S.C. § 1983, 2) his state law claim of gross negligence against the same two officers, and 3) his state law malicious prosecution claim against a third officer who, when plaintiff demanded medical attention following an allegedly overly tight application of handcuffs, charged him with obstructing a police officer.

We **REVERSE** the district court's decision dismissing plaintiff's claims, and **REMAND** to the district court for further proceedings.

### I.  BACKGROUND

On November 18, 1998, Officer Sewell of the City of Troy, Michigan Police Department stopped Charles Kostrzewa in the eastbound lane of Maple Road after Kostrzewa made an illegal left-hand turn.  A routine traffic check revealed that Kostrzewa's license had been suspended for failing to pay a previous traffic ticket, and that a civil warrant had been issued by the Oakland County Circuit Court due to plaintiff's failure to pay child support.  Officer Sewell placed plaintiff under arrest and then radioed Officers Kocenda and Jenkins, requesting that they pick up Kostrzewa and take him to the Troy Police Department.

Officers Kocenda and Jenkins arrived on the scene and, as plaintiff alleges in his complaint, "forcefully handcuffed"

him.[1]  Joint Appendix ("J.A.") at 9 (Compl.).  Plaintiff complained to the officers that the handcuffs were too small and tight, and that they were injuring his wrists.  In Officer Kocenda's police report, he stated that "[t]he handcuffs were only able to be latched to the first tooth as the arrested [sic] has large wrists."  J.A. at 60 (Kocenda Police Report).  The officers, in response to plaintiff's continued complaints of pain, informed him that it was the City of Troy's policy to handcuff detainees no matter what the circumstances.

In his complaint, the plaintiff stated that his cuffed wrists were further injured by his "being tossed about in the back seat . . . as the Defendant Officers amused themselves with unnecessary speeding, tailgating, abrupt braking, and general reckless driving along a winding road."  J.A. at 9 (Compl.).  While being thrown about the back seat of the car, "Plaintiff's head and shoulders were knocked against the plastic partition between the back seat and the officers, necessitating Plaintiff to wedge himself in the footrest portion of the back seat to keep from further injury."  J.A. at 9-10 (Compl.).

Plaintiff asked for medical care as soon as he arrived at the Troy Police Station.  The officers informed him that he had to be booked before he could receive medical attention. Sergeant McWilliams, on duty in the station when Kostrzewa was brought in for booking, was informed of plaintiff's requests for medical attention.  Sergeant McWilliams informed plaintiff that if he continued to insist on obtaining medical care, he would be criminally prosecuted for hindering and obstructing a police officer in the performance of his duties. Despite this warning, plaintiff still insisted on seeing a doctor, at which point Sergeant McWilliams began to scream and yell at him, further threatening him with prosecution for obstruction.  Kostrzewa still insisted on medial attention.

---

[1] When reviewing a district court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6), we treat all well-pleaded allegations in the complaint as true.  *Performance Contracting, Inc. v. Seabord Sur. Co.*, 163 F.3d 366, 369 (6th Cir. 1998).

Officers Kocenda and Jenkins were assigned to transport plaintiff to the hospital.  Before doing so, they searched for and found a larger set of handcuffs to use on Kostrzewa while transporting him.  Plaintiff alleges that Officer Kocenda then cuffed his wrists, which were already swollen, so that he could be taken to the hospital.  Plaintiff's handcuffs were not removed at the hospital until he was examined by a doctor, at which point Kocenda agreed to free only one of his wrists, despite the fact that plaintiff's wrists were allegedly "extremely swollen, red and painful."  J.A. at 11 (Compl.).  The doctor conducted a brief examination and recommended elevating the wrists and applying ice to reduce the swelling, as well as ibuprofen for the pain.  Plaintiff was cuffed for the transport back to the police station, and on the way back the officers allegedly drove in the same reckless manner.

Plaintiff was eventually charged with driving with a suspended license and obstructing a police officer's duties.  At his arraignment, plaintiff was given a personal bond on these misdemeanor charges.[2]

On February 11, 1999, Kostrzewa filed a complaint in the United States District Court for the Eastern District of Michigan, including the following claims against the defendants-appellees in this case:  1) that Officers Kocenda and Jenkins violated his Fourth Amendment rights by using excessive force when arresting him; 2) a state law claim alleging that Officers Kocenda and Jenkins were grossly negligent in effecting his arrest; 3) that Sergeant McWilliams violated his Fourth Amendment rights by prosecuting him on obstruction charges without probable cause to do so; 4) a state

---

[2]While plaintiff does not state in his complaint how the city misdemeanor charges for obstruction and driving with a suspended license were resolved, according to the defendants, plaintiff pleaded guilty to a reduced charge of driving without a valid license.  Pursuant to what the defendants allege was a plea agreement, the obstruction and driving with a suspended license charges were dismissed.  The complaint simply states that the criminal proceeding for interfering with a police officer "terminated in favor of Plaintiff."  J.A. at 15 (Compl.).

the district court's decision dismissing the § 1983 claim against the City of Troy.

### III.  CONCLUSION

For the foregoing reasons, the district court's decision dismissing plaintiff's claims is **REVERSED** and the case is **REMANDED** for further proceedings.

Amendment, his "claim that the city policy was unconstitutional also fails." J.A. at 85 (D. Ct. Order).

The Supreme Court has held that municipalities can be sued under 42 U.S.C. § 1983 not on the basis of *respondeat superior*, but only when "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The plaintiff alleged facts in his complaint which establish this direct link, stating that Officers Kocenda and Jenkins, upon hearing his complaints that the handcuffs were too tight and too small for his wrists, told him that, pursuant to the City of Troy's policy, they were required to handcuff all detainees.

While the Supreme Court in *Graham* acknowledged that the government has the right to use, or threaten to use, "some degree of physical coercion" when making an arrest, it is not clear from the face of the complaint that the government's interests in officer and public safety outweigh the detainee's interests in being free from severe pain and risk of injury, particularly in this case, where a non-violent detainee was forced to wear handcuffs that were allegedly too small, even on their loosest setting, simply because the City's policy may have required it. *See Graham*, 490 U.S. at 396. Moreover, for the district court to make a blanket statement that the use of handcuffs on detainees is, in all cases, objectively reasonable is at odds with the Supreme Court's holding in *Graham* that the particular facts of each case be examined when making a determination of the reasonableness of the force used. *See Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993) (refusing to hold that handcuffing is *per se* reasonable).

If, as plaintiff alleges, the City of Troy's handcuff policy requires that all detainees wear handcuffs, regardless of the circumstances, we cannot state that it is beyond doubt that the plaintiff can prove no set of facts showing Troy's policy to be anything but objectively reasonable. Thus, we **REVERSE**

law claim of malicious prosecution against McWilliams; and 5) a claim alleging that Troy's policy of handcuffing all detainees regardless of the circumstances violated his constitutional rights.

The defendants then filed a motion to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). On August 27, 1999, the district court granted the defendants-appellees' motion to dismiss with respect to all of the claims except the federal Fourth Amendment claim against Defendant McWilliams. Plaintiff filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b) concerning his excessive force claim, which the district court denied. The plaintiff and McWilliams subsequently agreed to dismiss, without prejudice, the federal Fourth Amendment claim. Plaintiff's appeal to this court from the final judgment followed.

## II.  ANALYSIS

### A.  Standard of Review

This court reviews a district court's decision dismissing a complaint under Fed. R. Civ. P. 12(b)(6) de novo. *Performance Contracting,* 163 F.3d at 369. This court treats all well-pleaded allegations in the complaint as true, and dismissal is proper only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief[.]" *Id*. (quotation omitted).

### B.  Plaintiff's Excessive Force Claim

#### 1. Was the Officers' Conduct Objectively Reasonable?

Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 alleging that Officers Kocenda and Jenkins used excessive force when arresting him, taking him to the police station, and transporting him to and from the hospital following his request for medical attention. The Supreme Court has held that excessive force claims are best analyzed under the Fourth Amendment's protection against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989). In determining

whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable. *Id*. at 396-97. Because this is a test of objective reasonableness, the underlying motivations of the officer in making the arrest should not be examined. *Id*. at 397.

In determining whether an officer's actions were reasonable, the specific facts of each case are key. *Id*. at 396. Courts should pay particular attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. While courts must look to the totality of the circumstances in determining whether a seizure was reasonable, they must be sure to view those facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

When making an arrest or investigatory stop, the government has "the right to use some degree of physical coercion or threat thereof to effect it." *Id*. Law enforcement officers are inevitably required to make difficult, split-second decisions regarding the amount of force needed in a particular situation, and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id*. at 396-97 (quotation omitted).

In looking to the facts of this case as stated in the complaint, it appears clear that none of the specific factors mentioned by the Supreme Court weigh in favor of a greater use of force. Plaintiff was stopped by police because he made an illegal left-hand turn, and was arrested following a routine traffic check when it was discovered that his license was suspended and that there was an outstanding civil warrant for his failure to pay child support. These crimes are not particularly severe, nor do they indicate that the plaintiff had a tendency toward violence. There is also no evidence that the plaintiff attempted to flee from the officers, or that he resisted arrest in any way.

the court documents submitted by the defendants do not indicate whether or not a plea agreement was made regarding the obstruction charge. Instead, the documents only show that Kostrzewa's obstruction charge was dismissed on the same day that he pleaded guilty to driving without a valid license. Without further information, the district court could not have determined conclusively that a plea agreement affecting the obstruction charge did, in fact, exist in this case. Thus, the district court erred in holding that it was beyond doubt that Kostrzewa could prove no set of facts in support of his state law malicious prosecution claim against Sergeant McWilliams that would entitle him to relief.[6]

### E.   Plaintiff's 42 U.S.C. § 1983 Claim Against the City of Troy

In his complaint, Kostrzewa challenges the constitutionality of Troy's alleged "policy requiring officers to handcuff detainees during transport, no matter the circumstances and even if injury was substantially likely to result." J.A. at 18 (Compl.). The district court granted the City's motion for dismissal, stating that, because Kostrzewa failed to show that his handcuffing was unconstitutional under the Fourth

---

[6]It should be noted, however, that even if Kostrzewa did enter into a plea agreement in the state court proceedings, this cannot serve as conclusive evidence that the proceedings did not terminate in Kostrzewa's favor if that agreement was procured by unfair means. *Blase v. Appicelli*, 489 N.W.2d 129, 132 (Mich. Ct. App. 1992). Thus, if the state threatened to prosecute Kostrzewa on a charge not supported by probable cause and promised to drop that charge if he pleaded guilty to another offense, the resulting plea bargain should not serve as a shield for an officer later charged with malicious prosecution. If Sergeant McWilliams charged plaintiff with obstructing a police officer simply because he demanded medical attention when at the police station, we cannot conclude that it is beyond doubt that there was probable cause to support this obstruction charge. Furthermore, if this charge, potentially devoid of probable cause, was used to procure Kostrzewa's guilty plea for driving without a valid license, then plaintiff's malicious prosecution claim would survive the motion to dismiss despite the existence of a plea agreement. We cannot and do not resolve these issues at this time.

was dismissed. These documents, however, do not indicate whether the obstruction charge was dismissed pursuant to a plea agreement.

The district court, in reviewing a motion to dismiss, may not consider matters beyond the complaint. 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed. 2000). If the district court simply took the defendants' assertion in their motion to dismiss as true in stating that a plea agreement had been reached regarding the charges made against Kostrzewa, then it both mischaracterized the plaintiff's complaint and improperly looked outside the complaint in deciding a case on Rule 12(b)(6) grounds.

Although in some instances the district court may consider evidence outside the complaint, in doing so it converts the motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(b)(6). If the district court chooses to treat the motion as one for summary judgment, it must give the parties a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id*. The district court did not give such notice to Kostrzewa, however, and to rule on a motion for summary judgment without giving Kostrzewa the opportunity to produce evidence regarding whether a plea agreement existed would constitute unfair surprise to the plaintiff, particularly because he did not file any affidavits or other documents outside the pleadings that would give him notice that the district court might venture outside the pleadings. *See Salehpour v. University of Tennessee*, 159 F.3d 199, 204 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 393 (6th Cir. 1975).

The district court may have partially based its conclusion that a plea bargain existed on the court documents that were attached to defendants' reply brief. A district court may consider public records in deciding a motion to dismiss without converting the motion to one for summary judgment. *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997). Even if this were the basis for the district court's conclusion,

The district court stated in its opinion dismissing plaintiff's excessive force claim that, even for individuals like Kostrzewa who are arrested for non-violent misdemeanors, an officer's decision to apply handcuffs when arresting an individual is objectively reasonable. While this circuit has noted that excessive force claims can be maintained for cuffing an individual's wrists too tightly, *see Martin v. Heideman*, 106 F.3d 1308, 1312-13 (6th Cir. 1997); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993), the district court noted that, in this instance, the officers cuffed the plaintiff on the loosest setting possible.

Essentially, the district court held that even if a person's wrists are too large to fit safely in an officer's handcuffs, the officer still acts in an objectively reasonable manner when he decides to fit the handcuffs onto the arrestee's wrists. The district court stated, "[p]olice officers are entitled to take reasonable precautions to ensure their safety and the safety of others, which includes the handcuffing of arrestees who will be with them from the arrest until their subsequent incarceration in a jail." J.A. at 84 (D. Ct. Order, Aug. 27, 1999).

While the Supreme Court stated in *Graham* that the right to use, or threaten to use, some degree of physical coercion is encompassed within the government's right to make an arrest, *Graham*, 490 U.S. at 396, in this case the plaintiff has alleged in his complaint more than the mere application of handcuffs that were tight. In his complaint, Kostrzewa stated that, while in the squad car, he repeatedly complained to the officers that the handcuffs were too tight and were causing him pain. Despite his complaints, the officers allegedly amused themselves by speeding unnecessarily, braking abruptly, and driving recklessly along a winding road, so as to toss Kostrzewa around the back seat of the car and place additional pressure on his wrists. Kostrzewa claims that, as a result of the officers' driving, his "head and shoulders were knocked against the plastic partition between the back seat and the officers," making it necessary for him "to wedge

himself in the footrest portion of the back seat to keep from further injury." J.A. at 9-10 (Compl.).

Plaintiff further alleged in his complaint that, when he demanded medical attention after being booked at the police station, the officers, having searched through several pairs of handcuffs to find a larger set, again decided to cuff him to transport him to the hospital, despite the fact that his wrists were swollen. By the time a doctor at Troy-Beaumont Hospital examined Kostrzewa, his "wrists were extremely swollen, red and painful." J.A. at 11 (Compl.). Nevertheless, Officer Kocenda agreed to remove only one of the handcuffs so that the doctor could examine the plaintiff. After a brief examination, the doctor recommended that Kostrzewa's wrists be elevated and that ice be applied, so as to reduce swelling. Officer Kocenda put the cuffs back on plaintiff's wrists after the examination. As a result of the cuffing on the day in question, plaintiff alleged "severe, debilitating and permanent injuries to both wrists."[3] J.A. at 13 (Compl.).

Taking these factual allegations as true, as this court must on review of the dismissal of a complaint, it does not appear beyond doubt that the plaintiff cannot prove that the officers' conduct was unreasonable. *Performance Contracting*, 163 F.3d at 369. Even if we ignore the officers' refusal to remove the handcuffs, despite plaintiff's original complaints that they were causing him pain, and even if we do not consider the officers' decision to place handcuffs on Kostrzewa when traveling to and from the hospital, despite the fact that his wrists were already red and swollen, if the defendants drove recklessly with the plaintiff handcuffed in the back seat so as to cause him further pain and injury, this, by itself, is enough to state a claim upon which a reasonable factfinder could conclude that the officers used excessive force.

---

[3] Regardless of whether Kostrzewa's injuries left physical marks or caused extensive physical damage, he can still successfully allege that Officers Kocenda and Jenkins used excessive force against him. *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999).

**D.  Plaintiff's State Law Malicious Prosecution Claim Against Sergeant McWilliams**

Under Michigan tort law, a plaintiff seeking to sue on the grounds of malicious prosecution must prove the following four elements:

(1)  that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his action, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.

*Cox v. Williams*, 593 N.W.2d 173, 174 (Mich. Ct. App. 1999). In the current case, the district court dismissed plaintiff's malicious prosecution claim for failure to satisfy the second element of the test set out above, showing that the criminal proceedings terminated in Kostrzewa's favor.

The district court correctly noted that, under Michigan law, when a criminal proceeding is resolved pursuant to a plea bargain, this generally is not considered a termination of the proceedings in the plaintiff's favor. *Cox*, 593 N.W.2d at 175. The district court was incorrect, however, in stating that the plaintiff had alleged in his complaint "that the hindering prosecution claim was dismissed pursuant to a plea agreement with the prosecution." J.A. at 89 (D. Ct. Order). To the contrary, nowhere in Kostrzewa's complaint does he state that he entered into a plea agreement, nor does the complaint state with specificity how the proceeding terminated in his favor; the complaint simply states that "[t]he proceeding terminated in favor of Plaintiff." J.A. at 15 (Compl.). In fact, it appears that the district court, in reaching its conclusion, may have relied upon the defendants' assertion in their motion to dismiss that a plea bargain had been made, J.A. at 33 (Defs.' Mot. to Dismiss), as well as court documents attached to the defendants' reply brief indicating that Kostrzewa pleaded guilty to a reduced sentence of driving without a valid license in his possession on the same day that the obstruction charge

Apparently, from the face of Kostrzewa's complaint, he argues that, even if Officers Kocenda and Jenkins did not act intentionally in their allegedly rough treatment of him, the officers' conduct was severe enough to constitute gross negligence. The district court, in dismissing plaintiff's gross negligence claim, relied on its earlier determination in the excessive force context that an officer's decision to handcuff an arrestee, regardless of the size of the arrestee's wrists, is objectively reasonable. Because the decision to handcuff Kostrzewa was objectively reasonable, the district court determined, the plaintiff could not possibly show that the officers' conduct was unreasonable, let alone "so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(2)(c).

Based on the facts alleged in the complaint, we believe that the district court erred in dismissing plaintiff's gross negligence claim against Officers Kocenda and Jenkins. As noted earlier, we disagree with the district court's holding that an officer's decision to cuff a person when detaining him, regardless of the size of his wrists, is objectively reasonable. The officers in this case cuffed Kostrzewa, despite his large wrists, and then allegedly drove recklessly back to the station, further injuring the plaintiff. Although plaintiff requested medical attention, the officers recuffed him on his trip to the hospital and until he was treated by the doctor, despite the fact that, by this time, plaintiff's wrists were "extremely swollen, red and painful." J.A. at 11 (Compl.). Given these facts, it is not beyond doubt that the plaintiff will be unable to show that the officers' conduct was "so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(2)(c). Thus, we **REVERSE** the district court's decision dismissing plaintiff's gross negligence claim against Officers Kocenda and Jenkins.

This circuit's decision in *Martin* illustrates that, even without the allegations of the officers' reckless driving, there are sufficient facts alleged in the complaint to overcome defendants' motion to dismiss. In *Martin*, the plaintiff claimed that the defendant officer used excessive force by handcuffing him so tightly that his hands were becoming numb. *Martin*, 106 F.3d at 1310. Martin complained that the cuffs were hurting him while being driven to the jail as well. *Id*. Following a twenty minute ride to the jail and a fifteen-minute wait in a holding cell, the officer finally loosened the handcuffs. On appeal, we reversed the district court's decision granting the defendant officer a directed verdict on Martin's excessive force claim, stating that "a genuine issue of material fact exist[ed] as to whether [the officer] used excessive force under the circumstances[.]" *Id*. at 1313.

That the plaintiff's claim in *Martin* created a genuine issue of material fact for jury determination is telling in this case, where the only question is whether Kostrzewa's complaint, assuming all the facts alleged therein are true, states a claim for which relief can be granted. When the *Martin* court decided that the plaintiff's excessive force claim, based on an overly-tight application of handcuffs, created a genuine issue of material fact which the jury must decide, it necessarily acknowledged within its holding that plaintiff's claims were legally redressable. Thus, because facts similar to those in the *Martin* case are alleged here, it follows that we cannot resolve Kostrzewa's excessive force claim at the 12(b)(6) stage.[4]

---

[4]This circuit's unpublished opinion in *Grooms v. Dockter*, No. 95-1261, 1996 WL 26917 (6th Cir. Jan. 23, 1996), a case with similar facts to the current case, also supports reversing the district court's decision to dismiss plaintiff's excessive force claim. In *Grooms*, the plaintiff was handcuffed "extremely tightly" before being placed in the police cruiser. *Id*. at *1. The plaintiff complained to the officers that he was losing circulation in his hands. The plaintiff was in visible pain in the car and was forced to lie on his side to take pressure off his wrists. The officers, for no apparent reason, left the plaintiff in the patrol car for fifteen minutes before leaving for the station, and then left the handcuffs on the plaintiff until immediately before he was placed in a holding cell. Upon removing the cuffs, the officer laughed and said: "'I guess they were on

Assuming all the facts alleged in Kostrzewa's complaint are true, as we must, there is no question that he has stated a legally sufficient claim for which relief can be granted.

## 2. Are the Officers Entitled to Qualified Immunity?

Under the doctrine of qualified immunity, governmental officials, including police officers, will not be held liable on a plaintiff's claim for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights which the reasonable officer in the defendants' position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This circuit has held that the right to be free from excessive force, including "excessively forceful handcuffing," is a clearly established right for purposes of the qualified immunity analysis. *Martin*, 106 F.3d at 1313; *Walton*, 995 F.2d at 1342.

"When making a qualified immunity analysis, it is important to remember that the defendant is, in essence, saying: 'If the plaintiff's version is credited, what I did, judged *today*, *arguendo* would be wrongful, but at the time I acted, no reasonable officer would have known he was acting wrongfully.'" *Kain v. Nesbitt*, 156 F.3d 669, 671 (6th Cir. 1998) (citation omitted). As this circuit has analyzed the qualified immunity issue in excessive force cases, the question of whether the reasonable officer would have known his conduct violated clearly established constitutional rights can be answered by the initial inquiry of whether the officer's use of force was objectively reasonable. *See Martin*, 106 F.3d 1312-13; *Walton*, 995 F.2d at 1342. It is clear from this circuit's analyses in various excessive force decisions that, having concluded that the right to be free from excessive force is clearly established, whether we grant qualified

---

too tight!'" *Id.*
   Based on these facts, we affirmed the district court's denial of defendant's motion for summary judgment on the grounds of qualified immunity, stating that the facts alleged "could support recovery" on a claim of excessive force. *Id.* at *2.

immunity in a particular case depends upon whether the officer did, in fact, use excessive force (*i.e.*, force that was not objectively reasonable). *Martin*, 106 F.3d 1312-13; *Walton*, 995 F.2d at 1342; *Kain*, 156 F.3d at 672-73. To put it another way, if there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful.

Kostrzewa has alleged facts indicating that Officers Kocenda and Jenkins may have acted unreasonably in their use of force against him. Thus, this court cannot grant defendants' Rule 12(b)(6) motion on the basis of qualified immunity because it is not clear that a reasonable officer in the defendants' situation would not have known that engaging in the conduct alleged by plaintiff was violative of plaintiff's clearly established right to be free from excessive force. Accordingly, the district court's decision dismissing plaintiff's excessive force claim against Officers Kocenda and Jenkins is **REVERSED**.[5]

## C. Plaintiff's Gross Negligence Claim

Under Michigan's governmental immunity statute, police officers are immune from tort liability for injuries caused by them while acting in the course of their employment if, among other conditions, their tortious conduct was not grossly negligent. Mich. Comp. Laws § 691.1407(1)-(2)(c). Michigan's governmental immunity statute defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(2)(c).

---

[5]The Supreme Court recently heard oral argument in *Saucier v. Katz*, No. 99-1977, an excessive force case on appeal from the United States Court of Appeals for the Ninth Circuit. One of the issues presented to the Court was whether the test for qualified immunity is the same as the test for reasonableness under the Fourth Amendment.