**William BURBANK, Plaintiff**

v.

**Sgt. Jeffery DAVIS Defendant**

**No. CIV.02–59–P–K.**

United States District Court, D. Maine.

Jan. 6, 2003.

Peter E. Rodway, Rodway & Horodyski, Michael J. Waxman, Portland, ME, for William Burbank, plaintiff.

Michael A. Cunniff, Portland, ME, Jay P. McCloskey, Portland, ME, for Jeffrey Davis, In His Official Capacity as Portland Police Sergeant, defendant.

## ORDER ON RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, REMITTITUR OR NEW TRIAL [1]

KRAVCHUK, United States Magistrate Judge.

William Burbank is the plaintiff in this 42 U.S.C. § 1983 action seeking damages for alleged violations of his constitutional rights during an early morning police encounter with a group of individuals in a pub parking lot in Portland, Maine. Following a three day trial in Bangor, Maine, after the case was moved here on the defendant's motion for a change of venue, a jury returned a verdict for the plaintiff in the amount of $5,000 compensatory and $50,000 punitive damages. Defendant Jeffrey Davis has now filed a renewed motion for judgment as a matter of law, having so moved at the close of the evidence, or in the alternative a motion for remittitur or a new trial. (Docket No. 44.) I **DENY** his motion.

### *Discussion*

Two separate federal court juries, one in Portland and one in Bangor, in two separate federal civil rights trials involving different plaintiffs and defendants, have now rejected the police version[s] of the events of July 30, 2000. *See Cummings v. Libby*, 176 F.Supp.2d 26 (D.Me.2001) (Hornby, J.)(order denying motion for new trial or remitter) Additionally, a judge of the Maine District Court, in a bench trial involving yet a different arrestee from this fracas, found the defendant not guilty, entertaining reasonable doubt about the facts and circumstances of these events after listening to the testimony of some of the same officers as testified at this trial. *See State v. Lechner*, Crim. No. 00–7220 (Dist.

---

1. Pursuant to Federal Rule of Civil Procedure 73(b) the parties have consented to allow the United States Magistrate Judge to conduct all proceedings in this matter.

Ct.Me.Mar.30, 2001) (Bradley, J.). While Davis premises his motion on a version of the facts other than Burbank's, the police version of these events has been soundly rejected. Therefore I am deeply troubled by the following comment in defendant's motion: "[I]f the verdict in this case is allowed to stand under these facts and circumstances, no law enforcement officer—including Sergeant Davis—will have a clear understanding of what constitutes 'reasonable' force in the District of Maine." (Renewed Mot. New Trial at 3–4.) None are so blind as those who will not see.

Briefly stated, the evidence in the present case, viewed in the light most favorable to Burbank, can be succinctly stated as follows: Officer Charles Libby of the Portland Police Department came upon Burbank, a group of his friends, and some other bystanders in the Brian Boru pub parking lot during the early morning hours of July 30, 2000. Libby believed Matthew Lechner posed a danger because of his aggressive behavior and attempted to place him under arrest. A tussle ensued and Libby employed his mace. Back-up officers arrived at the scene. Davis, the defendant in this case, approached Burbank because Libby and/or other officers at the scene identified Burbank as someone who needed to be placed under arrest for his disorderly behavior. Burbank was repeatedly questioning the officers' actions vis-à-vis Lechner, most probably in a loud and offensive manner and certainly after he had been told repeatedly to leave the area. After Burbank was cuffed, and compliant with police instructions, Davis punched him at least three times in the back of the head behind his ear, kicked him in the back of the knee, and threw him to the ground. Burbank sustained minor injuries including bruises and scrapes and an egg-like swelling behind his ear.

## A. Grounds for the Motion

### 1. Davis's Assertion that the Verdict is Against the Clear Weight of the Evidence

■ Davis's argument that the jury's verdict is against the clear weight of the evidence appears to depend upon the court rejecting the jury's obvious conclusion that Davis was the officer who arrested Burbank. It was a hotly disputed fact and the jury's conclusion that the more credible testimony supported the conclusion that Davis arrested Burbank is not without considerable support in the record. Yet Davis continues to press his claim of qualified immunity, but cites no case that stands for the proposition that because an officer, in this case Vogel, might be entitled to qualified immunity *if* he had been the arresting officer, Davis should be entitled to assert that claim to immunity. I fully understand that Davis's entitlement to immunity is really a two-part inquiry and the fact that the jury has concluded that there was an excessive use of force under the objective reasonableness standard of *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) does not foreclose an inquiry under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Next I must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. In other words, it is possible that Davis violated Burbank's clearly established constitutional rights but is immune from suit because it was objectively reasonable for Davis to do so because the unlawfulness of his actions was not apparent to him. What actions? According to Davis, he did not do anything to Burbank. Am I to undertake an analysis assuming that Vogel did what he said he did to Burbank to effectuate this arrest, and determine whether it was

objectively reasonable for Davis to believe that Vogel's conduct was lawful? Or am I to invent out of whole cloth the story that actually Davis did to Burbank what Vogel claims to have done and conclude from that scenario that the unlawfulness of the Vogel/Davis conduct was not apparent to Davis? If this case reduced to the simple question of whether Davis's use of the knee kick to subdue the passively resisting defendant, although viewed by the jury as excessive force, was nonetheless objectively reasonable under the second part of the *Saucier* analysis, it would be a different case and might very well present an interesting qualified immunity question.

The qualified immunity claim really reduces to the argument that because the injuries in this case were not serious, any officer in the Portland Police Department would be entitled to qualified immunity no matter what role he or she may have played in effecting this arrest. If the plaintiff is gratuitously hit in the back of the head instead of the face where more visible and photogenic marks are likely to appear, liability cannot attach. That argument misses the main point of the factual dispute in this record. Force applied to effectuate a lawful arrest is one thing; force applied after a suspect has submitted to arrest and is compliant is quite another thing.

Davis's "minimal injury" theory of the case is not supported by First Circuit case law, as I noted in my memorandum of decision on the earlier motion for summary judgment. Davis argues principally that he is entitled to judgment as a matter of law because the use of force caused no serious injury. In *Bastien v. Goddard,* 279 F.3d 10, 14 (1st Cir.2002) the Court stated:

> Our inquiry quickly reveals ... that liability may be imposed for the use of excessive force even in the absence of a

serious injury. . . . Although the severity of the injury also may be considered, *see, e.g., Dean v. City of Worcester,* 924 F.2d 364, 369 (1st Cir.1991), we have stated explicitly that a "serious injury" is not a prerequisite to recovery.

> [A] trialworthy "excessive force" claim is not precluded merely because only minor injuries were inflicted by the seizure. *See Lester [v. Chicago* ], 830 F.2d [706,] 714 [ (7th Cir.1987) ] (finding reversible error in district court "excessive force" instruction which required jury to find "severe injury," thus may have led jury to find for defendant where plaintiff's physical injuries consisted only of bruises); *see also Harper v. Harris County,* 21 F.3d 597, 600 (5th Cir.1994) (holding that plaintiff need not prove "significant injury" to assert Fourth Amendment "excessive force" claim).

*Alexis,* 67 F.3d at 353 n. 11. That view is widely held. *See, e.g., Kostrzewa v. City of Troy,* 247 F.3d 633, 639 (6th Cir.2001) (excessive force claims can be maintained regardless of whether injuries "left physical marks or caused extensive physical damage," including, as in that case, when individual's wrists are cuffed too tightly); *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir.2001); *Headwaters Forest Defense v. County of Humboldt,* 240 F.3d 1185, 1199 (9th Cir.), *vacated and remanded on other grounds by* 534 U.S. 801, 122 S.Ct. 24, 151 L.Ed.2d 1 (2001) ( "[W]hether the use of force poses a risk of permanent or significant injury is a *factor* to be considered in evaluating the need for the force used in a particular case—but it is certainly not dispositive."); *Lambert v. City of Dumas,* 187 F.3d 931, 936 (8th Cir. 1999) (circuit has rejected the "significant injury" requirement for excessive force claims, requiring instead "actual

injury"); *Rambo v. Daley,* 68 F.3d 203, 207 n. 2 (7th Cir.1995) (significant injury not required for Fourth Amendment excessive force claims); *Wardlaw v. Pickett,* 1 F.3d 1297, 1304 n. 7 (D.C.Cir.1993) (severity of injury a "relevant factor," but "we do not suggest that an individual *must* suffer significant injuries in order for the force used to be unreasonable").

*Id.* at 14–15 (footnotes omitted). Thus, though the extent of Burbank's injuries are relevant to a determination on the merits of this claim, the fact that the injuries may not be permanent or severe does not bar recovery under 42 U.S.C. § 1983. The jury was instructed that not every push or shove amounts to a constitutional violation. They determined that the force applied in this instance was more than is constitutionally acceptable.

### 2. Davis's Assertion that the Punitive and Compensatory Damage Awards are Excessive

■ Alternatively, Davis asks for a remittitur of the damages award or a new trial. The damages award is not excessive. In fact, the award is very much in line with the award in the related case of *Cummings,* 176 F. Supp 2d. 26 discussed above, where there was a compensatory award of $15,184 and a punitive award of $37,916. The plaintiff there had reasonable medical expenses of $184.00; Burbank's emergency room visit cost $173. He, like Cummings in the earlier case, also introduced persuasive evidence of pain, humiliation, and fear. A judge in this district has already said that a compensatory award of $15,184 is not unreasonable, as verdicts go. 176 F. Supp 2d. at 28–29. Burbank's compensatory award of $5,000 is in the same universe.

■ On the issue of punitive damages the jury could have found the following:

The plaintiff was an innocent bystander, doing nothing to provoke the police except for the fact that he was expressing concern about police misconduct against others. After he had been singled out as an arrestee Burbank became compliant and submitted to arrest. He was placed in cuffs, offering no resistance. Davis then gratuitously struck him in the back of the head, kneed him, and threw him to the ground. When Burbank and his friends complained to the police about the misconduct, describing the assailant as the officer with the bushy mustache, no attempt was made to identify Davis as the perpetrator, even though he was the only officer at the scene who matched the description. The jury could well have found that the failure to focus on Davis was attributable to Davis himself because he was the sergeant at the scene. The officers who testified on behalf of Davis identified him as their supervising officer and the person to whom they would be accountable if there were complaints of misconduct about them. That the jury might have concluded that Davis orchestrated a bit of a "cover-up" is not outside the realm of possibility based on the testimony they heard. If they reached these conclusions, the punitive damage award does not seem excessive to me.

Based upon all of the foregoing the motion is **DENIED**.