SMITH, Circuit Judge,
dissenting.
I respectfully dissent. When reviewing a grant or denial of qualified immunity, we recite the facts and view the evidence in the light most favorable to plaintiff Ken *808 yon, accepting his account of the facts as true where there are material inconsistencies. E.g., Guite v. Wright, 147 F.3d 747, 749 (8th Cir.1998). The majority opinion, however, gives too little deference to Kenyon’s version of the facts. The facts alleged by Kenyon, if true, establish that Edwards violated a clearly established constitutional right to be free from excessive force.
Kenyon alleged that as he was being handcuffed — in what several witnesses testified was an unnatural motion — he yelled that Edwards was badly hurting his arm. Edwards replied, “If you don’t shut your mouth, I’m gonna break the thing off.” Several witnesses at trial, including Kenyon, also testified that Kenyon did not resist arrest and that he only told the deputies that they were hurting his arm. Virginia Noah, Judith Rhodes, and Karen Cummins testified that Kenyon’s head was banged repeatedly against the car during the handcuffing. Assuming, as we must, that Kenyon did not resist, Edwards’s conduct potentially classifies as gratuitous and excessive force.
The majority adopts Edward’s characterization of the crowd, viewing it as hostile and with easy access to weapons, and also ignores the fact that four armed policemen were present during the handcuffing. The threat posed by the crowd, if any, to Edwards is a fact that should be resolved by the jury. The threat posed by Kenyon, if any, was minor, according to his account and that of several witnesses at trial. Although Kenyon was arrested on two misdemeanor charges, he was acquitted of one and the other was dismissed.[2]
Finally, the majority makes no mention of the testimony favorable to Kenyon’s claim that Edwards used an unorthodox method of handcuffing that was not officially sanctioned. Officer Folk, who received training from the same employer as Edwards, testified that when properly handcuffing an arrestee, one should bring the arm and hand down by the arrestee’s side and then around to the back. Edwards contends that Officer Folk’s testimony supports the notion that the technique of bringing a suspect’s raised arm behind his back represents a law enforcement technique that is taught in training classes, pointing to Officer Folk’s statement that “[wjell, it depends on which training class you take” after he was asked if the raised-arm technique was proper. However, Edwards’s argument takes Officer Folk’s statements out of context. Folk went on to state that he had been shown the raised-arm technique informally by an ex-Marine in 1969. He further stated that “I never did hear nothing about using that style but he [the ex-Marine] wasn’t certified back then” and that his training updates have continued to teach the method of bringing the arm behind the back after it has been lowered. Viewing the evidence in the light most favorable to Kenyon, it appears that Officer Folk considered the raised-arm technique unorthodox and not officially sanctioned.
These questions — whether Kenyon was resisting; whether Edwards made comments indicating an intent to cause gratuitous injury; whether the four deputies actually had control over the crowd; and whether the handcuffing technique was unorthodox — constitute material, disputed issues of material fact that should not be tried by this court on appeal.
I also disagree with the majority on the qualified immunity analysis. “We analyze *809 excessive force claims occurring in the context of seizures under the Fourth Amendment, using its reasonableness standard.” Henderson v. Munn, 439 F.3d 497, 502 (8th Cir.2006). “To establish a constitutional violation under the Fourth Amendment’s right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances.” Id. (quoting Littrell v. Franklin, 388 F.3d 578, 583 (8th Cir.2004) (quoting Greiner v. City of Champlin, 27 F.3d 1346, 1354 (8th Cir.1994))) (internal quotations omitted). “Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer’s conduct.” Id. (quoting Foster v. Metro. Airports Comm’n, 914 F.2d 1076, 1081 (8th Cir.1990) (citing Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))). At this procedural juncture, we must decide whether Kenyon “presented sufficient proof in support of his claim, if believed, to allow a reasonable jury to find the degree of force used against him was not ‘objectively reasonable.’ ” Id. On this record, Kenyon satisfies this standard.[3]
“The right to be free from excessive force is a clearly established right under the Fourth Amendment’s prohibition against unreasonable seizures of the person.” Guite, 147 F.3d at 750 (citing Graham, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443); accord Henderson, 439 F.3d at 503. The right “must be defined at the appropriate level of specificity before a court can determine whether it was clearly established.” Craighead v. Lee, 399 F.3d 954, 961 (8th Cir.), cert. denied, — U.S. -, 126 S.Ct. 472, 163 L.Ed.2d 359 (2005) (citing Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Brosseau v. Haugen, 543 U.S. 194, 199-200, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam)). “Although earlier cases involving ‘fundamentally similar’ facts can provide especially strong support for a conclusion that the law is clearly estab *810 lished, they are not necessary to such a finding.” Id. (quoting Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)) (internal quotations omitted). Instead, the issue is whether prior cases would have put a reasonable officer on notice that the degree of force used would violate the plaintiffs right not to be subjected to excessive force. Craighead, 399 F.3d at 962-63.
The relevant case law supports the conclusion that the right to be free from excessive force in handcuffing was clearly established when Edwards arrested Kenyon — in this circuit and in other circuits. Goff v. Bise, 173 F.3d 1068, 1073 (8th Cir.1999); accord Kopec v. Tate, 361 F.3d 772, 777 (3d Cir.2004); Kostrzewa v. City of Troy, 247 F.3d 633, 641 (6th Cir.2001); see Henderson, 439 F.3d at 503; Guite, 147 F.3d at 750.
Goff bolsters the denial of qualified immunity in the case at bar. In Goff, the plaintiff was tightly cuffed and choked, receiving a less substantial injury than Kenyon’s torn rotator cuff. Moreover, although personal animosity was present in Goff, Edwards’s comments during his arrest of Kenyon could indicate an intent to cause gratuitous injury. Whether an officer’s desire to inflict unnecessary pain is motivated by personal animosity, as in Goff, or by some other inappropriate intent is immaterial. Furthermore, Edwards testified that he had control of Kenyon even before the other three deputies arrived. Considering that four deputies were present and that Kenyon was not resisting, it is unclear how Kenyon posed any more of a threat than did the plaintiff in Goff — b oth men were subdued before the unnecessary force was used against them. In sum, Goff supports Kenyon’s contention that the right to be free from excessive force in handcuffing was clearly established.
Other circuits have held that the right to be free from excessive force in handcuffing is clearly established. E.g., Kopec, 361 F.3d at 777-78 (holding that officer used excessive force by placing excessively tight handcuffs on the plaintiff and refusing to loosen them for ten minutes); Kostrzewa, 247 F.3d at 641 (holding that allegation of excessively tight handcuffing establishes constitutional violation). In Kostrzewa, the Sixth Circuit stated, “This circuit has held that the right to be free from excessive force, including ‘excessively forceful handcuffing,’ is a clearly established right for purposes of the qualified immunity analysis.” 247 F.3d at 641 (citations omitted). Given this language, Kostrzewa turned upon the tight handcuffing of the plaintiff independently and without regard to the officers’ intentionally reckless driving, as the majority indicates.
For the foregoing reasons, I respectfully dissent.

. A jury acquitted Kenyon on the third-degree battery charge, and the public intoxication charge was dismissed. The majority makes no mention of any of this. Instead, the majority implies Kenyon's guilt on the charges.

. Kenyon presented sufficient proof to allow a jury to reasonably conclude that the force used against him was objectively unreasonable: First, Officer Folk testified that the proper manner of handcuffing someone was to bring the arm and hand down by their side and then around to the back. Officer Folk also indicated that the raised-arm technique is unorthodox. Second, Kenyon presented the testimony of several witnesses to his arrest, all of whom testified that Kenyon was not resisting arrest other than to the extent that he sought to avoid sustaining injury to his arm from Edwards's technique. Third, Kenyon was being arrested for misdemeanors. Fourth, at the time that Edwards allegedly used excessive force, Kenyon was immobilized. Deputies Edwards and Hale held Kenyon by the arms with his face down on a car, and Edwards proceeded to handcuff Kenyon. Edwards testified that he had control of Kenyon even before Hale arrived. (App.62). Again, several witnesses testified that Kenyon was not resisting arrest. Fifth, Kenyon's alleged injury, a tom rotator cuff that required surgery, tends to establish that excessive force may have been used by Edwards. Cf. Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir.2006) ("[Bjecause some force was reasonably required to arrest and handcuff [the plaintiff], his relatively minor scrapes and bruises and the less-than-permanent aggravation of a pri- or shoulder condition were de minimis injuries that support the conclusion that [the officer] did not use excessive force.”).
Edwards's torquing of Kenyon's arm “may have been a 'gratuitous and completely unnecessary act of violence,' ” in violation of Kenyon’s Fourth Amendment rights. Henderson, 439 F.3d at 503 (quoting Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir.2001)) (brackets omitted). Accepting these facts as tme, which we must at this procedural posture, Kenyon presented sufficient proof in support of his claim to allow a juty to conclude reasonably that the degree of force used was not objectively reasonable under the Fourth Amendment.