**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0566n.06

Case No. 18-5102

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 08, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ALEXANDER L. BAXTER, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| BRAD BRACEY; SPENCER R. HARRIS, | ) | TENNESSEE |
| | ) | |
| Defendants-Appellants. | ) | **OPINION** |

BEFORE: THAPAR, BUSH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge.

A neighbor caught Alexander Baxter burglarizing a house and called the police. Soon Baxter heard sirens and saw a helicopter looking for him, so he ran to another house (one he had broken into before) and hid in the basement. But the canine unit arrived and quickly sniffed him out. After giving several warnings, one of the officers released his dog, who apprehended Baxter with a bite to the arm. Baxter says he had already surrendered when the dog was released, and so the two officers violated his constitutional right to be free from excessive force. The case is before us now on an interlocutory appeal after the district court denied the officers' claims of qualified immunity. We reverse that decision because the officers' conduct, whether constitutional, did not violate any clearly established right.

I.

Officers Spencer Harris and Brad Bracey arrested Alexander Baxter on January 8, 2014 after he committed an aggravated burglary and fled the scene. A neighbor caught Baxter breaking into a home and called the police. He fled once he heard sirens and saw the helicopter—first hiding in a car, and then seeking refuge in the basement of a house he had previously broken into. There, Baxter hid between a chimney and a water heater while he watched and listened to the officers outside.

Harris and Bracey were part of Nashville's canine unit, which is deployed for serious crimes such as aggravated burglary. The two of them entered the house with their dog, Iwo. Bracey announced they would release the canine if Baxter did not surrender. Although Baxter heard the warnings, he stayed quiet. Harris—the dog's handler—repeated the warning. Again, Baxter remained quiet. So Harris released Iwo, who quickly found Baxter downstairs.

The two officers followed Iwo into the basement and—according to Baxter—surrounded him. Baxter claims that he raised his hands in the air when they came downstairs. But he never responded to the officers' warnings or communicated about where he was hiding. Within five to ten seconds of discovering Baxter, Harris again released Iwo—this time to apprehend him. Iwo restrained Baxter with a bite to the arm. The medical records reveal only one bite on Baxter's underarm, revealing that Iwo followed his training by apprehending Baxter with a single bite. Harris eventually commanded Iwo to release Baxter and placed him under arrest.

Baxter, proceeding pro se, sued Harris and Bracey under 42 U.S.C. § 1983. He asserts an excessive-force claim against Harris and a failure-to-intervene claim against Bracey. Originally, Bracey alone moved to dismiss the suit against him, arguing that qualified immunity shielded him from Baxter's somewhat amorphous claim that he failed to prevent the canine apprehension.

Baxter's complaint, we held, pleaded sufficient facts to withstand a motion to dismiss. But those facts must bear out during discovery for Baxter to defeat a motion for summary judgment. And that is where we are today.

After discovery, both officers moved for summary judgment, and the district court rejected both claims. The district court held that summary judgment was inappropriate because Baxter's testimony corroborated the factual assertions in the complaint that this court previously upheld against a motion to dismiss. If those facts were enough to defeat qualified immunity in a complaint, the court reasoned, Baxter's supporting testimony should do the same. Harris and Bracey then filed this interlocutory appeal. *See Plumhoff v. Rickard*, 572 U.S. 765, 771–72 (2014).

II.

Our inquiry here is guided by the interlocutory posture of the case. Because the district court denied summary judgment to the defendants, we must determine whether "the undisputed facts or the evidence viewed in the light most favorable to the plaintiff fail to establish a *prima facie* violation of clear constitutional law." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998). We will not weigh into credibility issues or try to resolve factual disputes. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). Our task is much simpler. We must decide the "neat abstract issue[] of law" regarding whether Baxter's version of the facts amounts to a clear constitutional violation. *See Berryman*, 150 F.3d at 563 (quoting *Johnson v. Jones*, 515 U.S. 304, 317 (1995)).

The clarity of the constitutional violation is critical. An individual suing under § 1983 must demonstrate two things: First, that the officer violated his constitutional rights. And second, that the violation was "clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted). The "clearly established" prong sets up an exacting

3

standard in which the plaintiff must show that "every reasonable official would understand that what he is doing is unlawful." *Id.* (internal citations and quotations omitted). "It is not enough that the rule is *suggested* by then-existing precedent"—it must be "beyond debate" and "settled law." *Id.* at 589–90 (emphasis added) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). The effect is that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Relevant here, courts can jump straight to the second question and dispose of a claim without deciding whether the officer's conduct violated the plaintiff's constitutional rights. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). So long as the alleged violation has not been clearly established, the officers receive qualified immunity and the suit can be dismissed. *See id.* Proceeding in this way is often appropriate in "cases in which the briefing of constitutional questions is woefully inadequate." *See Pearson v. Callahan*, 555 U.S. 223, 239 (2009). By resolving the issue on only the second prong, courts avoid "expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." *Ashcroft*, 563 U.S. at 735 (internal quotations and citations omitted).

That is the case here. The officers are entitled to qualified immunity because Harris's use of the canine to apprehend Baxter did not violate clearly established law. And because this court does not have the benefit of sophisticated adversarial briefing from both parties, we decline to resolve the more complex constitutional question raised by Baxter's claim. *See Pearson*, 555 U.S. at 239.

The Fourth Amendment's prohibition against unreasonable seizures protects individuals from an officer's use of excessive force while making an arrest. *See Graham v. Connor*, 490 U.S.

386, 394–95 (1989). Whether the force was excessive turns on its objective reasonableness under the totality of the circumstances. *Id.* at 395–96; *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). And the reasonableness of the officer's force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

We have demarcated the outer bounds of excessive-force cases involving canine seizures with some degree of clarity. In this circuit, for example, we have held that officers cannot "use[] an inadequately trained canine, without warning, to apprehend two suspects who were not fleeing." *Campbell v. City of Springboro*, 700 F.3d 779, 789 (6th Cir. 2013). But just as clearly, we have upheld the use of a well-trained canine to apprehend a fleeing suspect in a dark and unfamiliar location. *See Robinette v. Barnes*, 854 F.2d 909, 913–14 (6th Cir. 1988). These cases and their progeny establish guidance on the ends of the spectrum, but the middle ground between the two proves much hazier.

Baxter's case looks closer to *Robinette* than *Campbell*—but the fit is not perfect. Like the suspect in *Robinette*, Baxter fled the police after committing a serious crime and hid in an unfamiliar location. He also ignored multiple warnings that a canine would be released, choosing to remain silent as he hid. And unlike *Campbell*, the canine here was properly trained with no apparent history of bad behavior. All of these facts would lead a reasonable officer to believe that the use of a canine to apprehend Baxter did not violate the Fourth Amendment. *See Graham*, 490 U.S. at 396; *Robinette*, 854 F.2d at 913–14.

Militating against those facts is Baxter's claim that he surrendered by raising his hands in the air before Harris released the dog. This conduct might show that he did not pose the kind of safety threat justifying a forceful arrest. *See, e.g., Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th

Cir. 2006). But Baxter does not point us to any case law suggesting that raising his hands, on its own, is enough to put Harris on notice that a canine apprehension was unlawful in these circumstances. That's because even with Baxter's hands raised, Harris faced a suspect hiding in an unfamiliar location after fleeing from the police who posed an unknown safety risk—all factors the *Campbell* court identified as significant to determining whether the seizure was lawful. *See Campbell*, 700 F.3d at 788–89.

Given all of this, we cannot say that Harris violated any clearly established law in using Iwo to apprehend Baxter. Even if Baxter raised his hands, the other circumstances—undisputed in the record below—weigh against a finding that "every reasonable official would understand that what [Harris did] is unlawful." *Wesby*, 138 S. Ct. at 589 (internal quotations omitted). For that reason, Harris is entitled to qualified immunity.

We reach this decision mindful of the fact that, on appeal from the prior motion to dismiss, we held that Baxter's right to be free from excessive force was clearly established under *Campbell*. But there, we looked only at the facts as pleaded in the complaint. Baxter alleged that he surrendered before the arrest, and his complaint was understandably silent about whether Iwo had proper training or the time that elapsed before Harris released the dog. The facts revealed during discovery add much-needed color to this case—as they often do. We now know that Iwo was well-trained, that Harris released him within only a few seconds after entering the basement, and that Baxter fled the scene, hid in the basement, was warned twice, and still never communicated with the officers before being apprehended. All of these facts change the analysis and move the well-

pleaded claims to a place where we cannot say that "every reasonable official would understand that what he is doing is unlawful."[1] *Wesby*, 138 S. Ct. at 589 (internal quotation marks omitted).

Finally, it follows from there that Bracey receives the same protection of qualified immunity. Police officers "can be held liable for failure to protect a person from the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Such a claim requires proving that the officer "observed or had reason to know that excessive force would be or was being used" and "the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* While there are numerous reasons to find that Baxter cannot prevail on this claim, the first is the most obvious: If it is not clearly established that Harris used excessive force in apprehending Baxter, it cannot be that Bracey observed or had reason to know that excessive force would be used.

III.

For the above-stated reasons, we **REVERSE** the district court's order denying summary judgment.

---

[1] It also bears mentioning that only Bracey filed the initial motion to dismiss. Harris, who is directly responsible for the canine apprehension, defends his conduct under qualified immunity for the first time.