Angela **LEISURE, et al., Plaintiffs,**

v.

**CITY OF CINCINNATI,
et al., Defendants.**

No. C–1–01–286.

United States District Court,
S.D. Ohio,
Western Division.

May 6, 2003.

Alphonse Adam Gerhardstein, Laufman & Gerhardstein, Kenneth L. Lawson, Lawson & Associates, Cincinnati, OH, for plaintiffs.

Daniel Wilson Drake, Columbus, OH, Mark Carl Vollman, Hamilton County Prosecutor's Office, Donald Edson Hardin, Hardin, Lefton, Lazarus & Marks LLC, Richard Ganulin, Assistant City Solicitor, Geri H. Geiler, Cincinnati, OH, for defendants.

### ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendants' Motion to Dismiss Second Amended Complaint, Motion to Strike, Motion for More Definite Statement and Memorandum in Support (doc. 46), Defendants' Supplement (doc. 47), Plaintiffs' Memorandum in Opposition and Motion for Continuance to Permit Discovery Pursuant to Rule 56(f) (doc. 48), and Defendants' Reply and Memorandum in Opposition to Motion for Continuance (doc. 49).

### I. Background

The Court reports the facts of this case based on a review of the allegations in the Plaintiffs' Second Amended Complaint (doc. 42). This case concerns the April 7, 2001 fatal shooting of Timothy Thomas by Cincinnati Police Officer Stephen Roach (*Id.*). Thomas fled in the early morning hours after being recognized by police and was pursued by Defendant Roach and other officers through the streets and alleys of Over-the-Rhine, a Cincinnati neighborhood (*Id.*). Officer Roach, with gun out and his hand on the trigger, ran down the side of a building attempting to apprehend Thomas (*Id.*). Thomas ran around the corner of the building and Roach shot him (*Id.*).

The killing of Timothy Thomas, an African-American, by Defendant Roach, a Caucasian police officer, triggered events leading to riots, protests, and a boycott that persists to the present. Officer Roach was subsequently prosecuted in the Hamilton County Municipal Court for negligent homicide, but was ultimately acquitted of the charge in a bench trial. *Ohio v. Stephen Roach,* Case No. 01CRB15477 A/B, (Hamilton County Municipal Court, September 2001) (doc. 46). A parallel investigation into the shooting was commenced by the Department of Justice ("DOJ"), but that investigation, as elaborated upon more below, is still pending.

This civil suit, brought by Thomas' estate, was originally filed May 9, 2001 (doc. 1). The Second Amended Complaint alleges civil rights violations pursuant to 42 U.S.C. § 1983, wrongful death under Ohio Revised Code § 2125.01, and loss of consortium, naming as Defendants Officer Roach and the City of Cincinnati (hereinafter "City") (doc. 42). In order to avoid prejudicing the rights of Defendant Roach, this case has been held in abeyance since December 6, 2002, pending the outcome of the DOJ investigation of the shooting (docs. 33 & 35). In autumn 2002 the parties made repeated attempts to verify the status of the DOJ investigation to no avail (doc. 33). The Court telephoned the DOJ during a January 3, 2003 status conference in order to urge movement on the investigation (doc. 35).

On February 12, 2003, the Court set a trial schedule based on the Court's understanding that the DOJ was not pursuing an investigation and that this case needs to be resolved expeditiously for the good of the parties and the Cincinnati community (doc. 45). The Court also ordered that any motions premised upon qualified immunity be filed so that a decision on that issue could be entered promptly (*Id.*). Only re-

cently, in April of 2003, has the Court become aware that the DOJ investigation is still active. Regardless of this fact, the Court finds that it is still proper to issue a ruling on the question of qualified immunity, as any interlocutory appeal to such ruling can thus be completed so that trial can begin at the earliest possible date. In addition, in order to avoid all possible delay, the Court will decide the balance of the pending ripe motions case herein.

Due to the sensitive nature of this case, the Court desires to make clear that at this point in the process, the Court is not determining the truth of Plaintiffs' allegations. At this point the Court is only determining whether Plaintiffs' allegations meet the threshold requirements to survive a motion to dismiss and to defeat a claim of qualified immunity. In doing so, the Court must accept as true all allegations in the well-pleaded complaint under attack. *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983). As this matter proceeds, the process will provide further opportunity to test whether Plaintiffs can prove their allegations.

## II. Qualified Immunity for Defendant Roach

■ Qualified immunity is a doctrine that protects "government officials acting in their official capacities from damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has recognized the doctrine of qualified immunity in Section 1983 cases. *Greene v. Reeves,* 80 F.3d 1101, 1104 (6th Cir.1996). A ruling on qualified immunity should be made early in the proceedings so that the cost and expenses of trial are avoided where the defense is dispositive. *Hunter v. Bryant,*

502 U.S. 224, 226, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Such immunity is an entitlement not to stand trial, not a defense from liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

The qualified immunity analysis involves two steps. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The first step is to determine whether a constitutional right would have been violated on the facts alleged, for if no right would have been violated, there is no need for further inquiry. *Id.* at 201, 121 S.Ct. 2151. To determine whether the facts alleged show that a constitutional right has been violated, the court must take the facts in the light most favorable to the party asserting the injury. *Id.* citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

■ If a violation could be made out on a favorable view of the injured party's facts, the second step is to ask whether the right was clearly established. *Id.* This inquiry, the Supreme Court has instructed, "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* The Supreme Court has directed that "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) citing *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). In conducting its analysis, the Court should use plaintiff's allegations in the complaint to determine the appropriateness of defendants' qualified immunity defense. *Onderik v. Morgan,* 897 F.2d 204, 209 (6th Cir. 1989) citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411

(1985) [1].

Having reviewed Defendants' Motion it is clear that qualified immunity is being invoked solely as to Defendant Roach (doc. 46). The core of Defendant Roach's qualified immunity argument is premised on the theory that the shooting of Thomas was accidental or inadvertent. As such, citing *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), Defendant Roach argues that he is entitled to qualified immunity because there is no constitutional right to be free of an inadvertent use of force (doc. 46). Defendant Roach further argues, citing *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), that even in cases where a clearly established constitutional right has been violated, if the officer was reasonably mistaken, the officer still benefits from the protection of qualified immunity (*Id.*). Defendant Roach also argues "the imputation of ulterior motive" to him by Plaintiffs "requires that the Second Amended Complaint must contain specific and nonconclusory allegations of fact in order to overcome the qualified immunity defense," and that Plaintiffs have failed to provide such allegations (*Id.*). Finally, Defendant Roach protests that Plaintiffs' assertion that "Mr. Thomas was wanted on misdemeanor charges, was unarmed and posed no threat to the officer" fails to account for the fact that Roach did not know any of these things as he was pursuing Thomas, who was "fleeing in the early hours of the morning down dark back al-

leys in Over–the–Rhine" (doc. 49). Defendant Roach argues that it was objectively reasonable for him to not know any of these things (*Id.*). Moreover, he argues, one who flees from the police under such circumstances does "not have a right to do so without risking tragic consequences" (doc. 46).

■ Plaintiffs argue that their Second Amended Complaint clearly states a Fourth Amendment claim of excessive force against Officer Roach (doc. 48). The Fourth Amendment protects citizens from unreasonable searches or seizures. Excessive force used by a government entity in seizing a citizen is unreasonable and violates the Fourth Amendment.

Plaintiffs argue, based on *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) that the use of deadly force in the absence of probable cause to believe a subject is a danger to the police or the public runs afoul of the Fourth Amendment (doc. 48). Plaintiffs read Defendants' argument that Roach's use of force was inadvertent to constitute a negligence defense, and characterize such a defense as absurd (*Id.*). Plaintiffs question Officer Roach's veracity because he had two differing explanations about how the shooting occurred (*Id.*). They also apparently argue that it would be unjust to dismiss Roach from the case without an opportunity to elicit Roach's testimony so as to test the truthfulness of his second explanation (*Id.*).

---

**1.** *Aupperlee v. Coughlin*, 97 F.Supp.2d 336, 340 (E.D.N.Y.2000) (the framework in which court considers a motion to dismiss case that includes a claim by defendant of qualified immunity is confined to facts stated on the face of the complaint, facts appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken). As such, the Court will refrain from references to the facts within the documents affixed by Defendants to their Response, but

pursuant to Defendants' request, will take judicial notice of the City's Police Procedure Manual. The Court finds that it is proper to take judicial notice of the contents of such manual, which represent a municipal policy. The Court will refer to such policy because in the second stage of the qualified immunity analysis the Court must consider the conduct of a reasonable officer. A reasonable officer would be acutely aware of the formal policies in the City's Police Procedure Manual.

█ ·The Court finds that the facts in this situation, taken in the light most favorable to Plaintiffs, militate against a grant of qualified immunity to Defendant Roach. The first step of the qualified immunity analysis is met here because Plaintiffs' Second Amended Complaint adequately alleges that Thomas' Fourth Amendment right to be free from excessive force was violated. The Supreme Court, in *Garner*, established that "where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." 471 U.S. 1, 9–10, 105 S.Ct. 1694, 85 L.Ed.2d 1.

In *Garner*, a Memphis police officer shot a fleeing suspect in the dark of night, as the suspect fled over the fence in a backyard of a house he was suspected of burglarizing. *Id.* at 3, 105 S.Ct. 1694. The officer used deadly force although he was "reasonably sure" the suspect was unarmed, was seventeen or eighteen years old, and of slight build. *Id.* The Supreme Court found in that case that the use of force was excessive, stating that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Id.* at 10, 105 S.Ct. 1694.

The Court finds that Plaintiff's allegations viewed under *Garner*, taken as true as required by the law at this stage of the proceedings, establish the basis for a constitutional violation. In the case at hand, Thomas was also a unarmed youth fleeing in the dark of night. Though Defendant Roach definitely had probable cause to arrest or stop Thomas based upon his flight, it is not so clear that Roach had a reasonable belief that Thomas was armed or dangerous. Defendant Roach argues that the flight was at night through the neighborhood with the highest crime in the city. However, in the same way that it

was not enough in *Garner* that the events took place in the dark of night, darkness is also not enough in this case to warrant the use of deadly force. The Court likewise finds that the surroundings of a high-crime neighborhood is not enough of a reason to conclude, without more, that a fleeing suspect is armed and dangerous. Finally, Roach's knowledge that Thomas had a number of outstanding warrants, with nothing more, did not necessarily support the conclusion that Thomas was dangerous, as the facts ultimately demonstrated.

The Court further finds that Plaintiffs have also sufficiently alleged a violation of Thomas' due process rights. Such allegation can also serve as the basis for the case to proceed on an alternatively pleaded constitutional violation. The Supreme Court, in *County of Sacramento v. Lewis*, established that although substantive due process claims based upon clearly deliberate decisions intended to harm or injure are "most likely to rise to the conscience-shocking level," those claims are not exclusive. 523 U.S. 833, 849, 118 S.Ct. 1708 (1998). Claims based upon "something more than negligence but less than intentional conduct, such as recklessness or gross negligence" or "mid-level fault" could also be actionable in some circumstances. *Id.* The Supreme Court applied such analysis in *County of Sacramento*, a case where a police officer in his cruiser accidently stopped and killed a suspect fleeing on a motorcycle by crashing into him. *Id.* In *County of Sacramento*, the motorcycle was traveling at speeds up to 100 m.p.h. in a residential neighborhood, endangering those on the motorcycle, bystanders, and forcing two cars and a bicycle off of the road. *Id.* The Supreme Court found that the police officer's high-speed pursuit of the suspects under these circumstances, requiring instant judgment, failed to "inch close enough to harmful purpose to spark the shock that implicates

'the large concerns of the governors and the governed.'" *Id.* at 853–54, 118 S.Ct. 1708 *citing Daniels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In this case, however, Thomas' flight on foot did not clearly pose a threat to either the police or the community. The danger presented by a motorcycle on a reckless collision course at 100 m.p.h. is not the same as that of a suspect fleeing on foot. Plaintiffs allege that Defendant Roach pursued Thomas with "his gun out and his hand on the trigger" (doc. 42), contrary to the policy of the Cincinnati Police Department (doc. 48). Such conduct, even if only the result of "mid-level fault," inches close enough to harmful purpose to spark shock under *County of Sacramento.* Though Defendants read *County of Sacramento* to foreclose due process liability in a pursuit case absent purpose to cause harm (doc. 48), the Court finds that the specific holding of the case pertains to high-speed chases. 523 U.S. 833, 854, 118 S.Ct. 1708, 140 L.Ed.2d 1043. Defendants further try to frame a pursuit on foot as high-speed, but the Court does not find this proposition convincing, as a person on foot cannot travel as fast as a person on a motorcycle. The urgency and the obvious danger to the public is not the same. For these reasons, the Court finds that consonant with *County of Sacramento,* Plaintiffs' allegations of violation of due process can serve as an alternative basis for a constitutional violation.

■ As a third alternative theory, Plaintiffs have alleged a violation of Thomas' equal protection rights (doc. 42). Defendants argue the Plaintiffs have failed to articulate an equal protection claim, citing precedent on selective enforcement claims (doc. 46) (*citing Gardenhire v. Schubert,* 205 F.3d 303, 319 (6th Cir.2000)). Plaintiffs did not address this argument. Selective enforcement claims arise when the

enforcement of an otherwise valid law can be a means of violating constitutional rights by invidious discrimination. *Futernick v. Sumpter Township,* 78 F.3d 1051, 1056 (6th Cir.1996).

The Court finds that Plaintiffs' Second Amended Complaint can be read to include an equal protection claim based not on selective but proper enforcement of a valid law, but upon an alleged unwritten policy and practice of heavy-handed abusive enforcement against African Americans (doc. 42, §§ C through F). This case alleges more than garden-variety selective enforcement. As such, the Court finds Defendants' reliance upon selective enforcement case law misplaced. Moreover, Defendants' citation to *Gardenhire v. Schubert,* 205 F.3d 303, 319, is unpersuasive as Defendants rely on language therein pertaining to selective prosecution (doc. 46), and as that case was at the summary judgment stage rather than at the motion to dismiss stage.

Taken in the light most favorable to Plaintiffs, their Second Amended Complaint, with allegations of police discrimination spanning decades, can be read as a challenge by members of a suspect class against an racially invidious policy of heavy-handed enforcement. Discriminatory purpose can be shown through discriminatory application of a government policy. *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). As such, Defendants place too much of a burden upon Plaintiffs, by purporting to impose the requirement that Plaintiffs present the facts that "similarly situated fleeing white individuals wanted for open warrants and escaping arrest by running through a high-crime neighborhood at 2:15 a.m." were treated differently (doc. 46). Such an onerous requirement is not necessarily applicable to an equal protection complaint facing a challenge under

Fed.R.Civ.P. 12(b)(6). The Court finds that Plaintiffs have stated enough in their Second Amended Complaint to protect their equal protection claim from dismissal at this early stage of the litigation.

The second step in qualified immunity analysis is to ask whether the alleged constitutional violations were clearly established at the time of the shooting of Timothy Thomas. As previously stated, the Supreme Court has directed that "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) *citing Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

Plaintiffs' Second Amended Complaint alleges that Officer Roach pursued Thomas with his gun out and his finger on the trigger (doc. 42). Plaintiffs further allege that after the shooting, Officer Roach lied to homicide investigators and others as to why he shot Thomas (*Id.*).

■ The dispositive question at the second step of the qualified immunity analysis is whether it was reasonable under the circumstances alleged for Officer Roach to pursue Thomas with his gun out and his finger on the trigger. Plaintiffs' allegation that Officer Roach lied about the shooting clearly raises the question whether Roach thought it was reasonable to have acted in such fashion. Such allegation aside, the Court finds that a reasonable officer would be acutely aware of the constitutional principles surrounding the use of deadly force. If an officer lacks probable cause that a fleeing perpetrator presents a threat to the officer or to others, the use of deadly force to stop the perpetrator violates the Constitution. *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). There is no doubt that this constitutional violation was clearly established in April of 2001.

The Court's conclusion is bolstered by a review of the City's Police Procedure Manual, of which the Court takes judicial notice. The City's Use of Force policy encapsulates *Garner*, and a reasonable officer would be aware of the formal policies surrounding the use of deadly force, "the most serious act in which a police officer can engage." Cincinnati Police Procedure Manual § 12.550. Under the City's official Use of Force policy, Roach was not authorized to use a firearm based upon a general notification by the dispatcher that a subject is wanted. *Id.* at 2, 105 S.Ct. 1694. Furthermore, under the same policy, "[i]n all other felonies and misdemeanors, police personnel will not fire shots even if the perpetrator attempts or succeeds in his attempt to flee." *Id.* at 3, 105 S.Ct. 1694. Having reviewed the City's Use of Force policy, the Court finds that a reasonable officer would be aware that he was not authorized to use a firearm based upon a general notification that Thomas was wanted, and would be aware that he should not run after Thomas with his finger on the trigger.

For these reasons the Court concludes, having completed the second step of the qualified immunity analysis, that Plaintiffs have adequately alleged that Timothy Thomas' constitutional rights under *Garner* were clearly established and violated by Defendant Roach. As such, Defendant Roach is not entitled to qualified immunity.

## III. Defendants' Motion to Strike and Motion for a More Definite Statement

Defendants move the Court "to strike the immaterial and irrelevant allegations in the Second Amended Complaint and to require that Plaintiffs file a more definite statement" (doc. 46). As for their Motion

to Strike, Defendants argue that the allegations in Plaintiffs' Second Amended Complaint showing evidence of racial discrimination on the part of Cincinnati police spanning as far back as thirty-five years ago "have nothing at all to do with the claims on behalf of the decedent" (doc. 49). Defendants argue further that Plaintiffs do not have standing to "make unrelated allegations on behalf of unidentified individuals" (*Id.*).

The Court does not find Defendants' arguments well-taken. A motion to strike, under Rule 12(f), is a mechanism permitting the Court to strike from the pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The Court does not find the allegations in Plaintiffs Second Amended Complaint to fall within any of these enumerated categories. Plaintiffs allege that city policies contributed to the killing of Timothy Thomas (doc. 48). The allegation that there is a history of racial discrimination in the Cincinnati Police Department is relevant. Moreover, not every paragraph of a complaint must stand in isolation to state a claim. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The law allows Plaintiffs' Complaint to place the shooting of Timothy Thomas into a larger historical perspective of city policy and events. Thus the Court is required to allow Plaintiff's Second Amended Complaint to include similar or even exact portions that match the pleadings in *Tyehimba v. City of Cincinnati, et al.*, 2001 WL 1842470 (S.D.Ohio 2001), the case that became the community-police collaborative proceeding pending before the Honorable Susan J. Dlott, *In re Cincinnati Policing*, Case No. C–1–99–317.

Plaintiffs also have standing to assert their claims. *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). As next-of-kin, they have alleged a specific injury-in-fact, the death Timothy Thomas, that can arguably be linked to police department policies. Such injury is redressable to the extent that policies can be changed and economic damages can be awarded. Because the Court finds that Plaintiffs have standing and that their Second Amended Complaint does not contain immaterial allegations, Defendants' Motion to Strike is denied.

Defendants likewise moved for a Motion for a More Definite Statement, based upon the theory that the Second Amended Complaint fails to contain specific and nonconclusory allegations of fact in order to overcome the qualified immunity defense (doc. 46). Defendants argue under *Goad v. Mitchell*, 297 F.3d 497 (6th Cir.2002) that Plaintiffs' imputation of improper motive to Defendant Roach requires specific and nonconclusory allegations in the Second Amended Complaint (doc. 46). The Court rejects Defendants' argument first because under *Goad*, there is no such requirement, but district courts are given the discretion to impose such a requirement. 297 F.3d 497, 504. The Court rejects Defendants' argument secondly because it has found a basis in Plaintiffs' allegations, as articulated above, to overcome the qualified immunity defense. The Court's articulated basis is that Plaintiffs have adequately alleged that the constitutional rights of Timothy Thomas to be free from excessive police force, to be free from official actions that shock the conscience, and to have equal protection of the law were violated when Defendant Roach allegedly pursued Thomas with his gun drawn and his finger on the trigger.

There is nothing so vague in Plaintiffs' Second Amended Complaint that Defendants cannot craft an answer. Defendants' Motion for a More Definite Statement is denied.

## IV. Defendants' Motion to Dismiss Plaintiffs' Claims Against the City of Cincinnati.

A motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) must be viewed in the light most favorable to the party opposing the motion. *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983). The district court must accept as true all allegations in the well-pleaded complaint under attack. *Id.* In addition, the court may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Balderaz v. Porter,* 578 F.Supp. 1491, 1494 (S.D.Ohio 1983).

██ The City raises a number of arguments supporting the theory that it cannot be liable to Plaintiffs (doc. 46). First, the City argues that it cannot be liable because there was no constitutional deprivation (*Id.*). However, the Court rejects such argument, consonant with its findings above. Taken in the light most favorable to Plaintiffs, they have alleged three viable theories of constitutional deprivation based upon theories of excessive force, substantive due process, and equal protection. Next, the City argues that it does not have respondeat superior liability under *Monell v. Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) because it had no specific official policy or custom that proximately caused a constitutional injury (doc. 46). However, Plaintiffs argue that the Second Amended Complaint alleges that there was indeed an unwritten "cat and mouse" pursuit policy articulated by the Chief of Police, a policy of aggressive policing against African Americans, and a failure to train officers on use of force (doc. 48) (referring to Second Amended Complaint, (doc. 42), § I 62–69, pp. 15–16). Plaintiffs also allege that some of the police knew of Thomas and of the nature of his outstanding warrants (doc. 42). There was no policy whereby the dispatcher communicated that the suspect was wanted only for misdemeanor offenses (*Id.*). The Court finds that Plaintiffs have adequately alleged that Defendant City's policies or lack thereof proximately resulted in the death of Timothy Thomas. As such, the City's arguments that it does not have respondeat superior liability under *Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), are not well-taken.

Thirdly, the City argues that the Second Amended Complaint does not state a claim that the City of Cincinnati has an unconstitutional official policy or custom that caused a violation of Thomas' Fourth Amendment, due process, or equal protection rights (doc. 46). This argument mirrors that above on respondeat superior. Though the City runs through a laundry list of "constitutionally adequate policies and procedures" it has on the books, Plaintiffs' Second Amended Complaint, as explained above, can be read to attack an unwritten custom articulated by the Chief of Police. That unwritten custom, Plaintiffs allege, makes a game of pursuits, that "cops like a good foot pursuit...the thrill of victory the agony of defeat" (doc. 48) (Second Amended Complaint, (doc. 42), § I 67, p. 16). Defendant correctly cites to *Doe v. Tennessee,* 103 F.3d 495 (6th Cir. 1996) for authority on unconstitutional custom, including the proposition that such custom "must be so permanent and well settled as to constitute a custom or usage with the force of law" (doc. 46). Plaintiffs' Second Amended Complaint alleges that an unwritten custom has persisted for many years, citing to events and history that Defendant challenged as "unrelated" and "irrelevant" to Plaintiffs' injury. The

Court finds that Plaintiffs' Second Amended Complaint adequately pleads that the City has had unconstitutional customs so permanent and well settled as to meet the Sixth Circuit's definition in *Doe.* The Court rejects the City's third set of arguments.

Fourth, the City challenges the standing of Plaintiffs, a subject already addressed by the Court above, in the context of Defendants' Motion to Strike. Plaintiffs have standing under Ohio law to bring state tort claims against both Defendant Roach and the City of Cincinnati. *State, ex rel. Dallman v. Court of Common Pleas,* 35 Ohio St.2d 176, 298 N.E.2d 515 (1973) (A party has standing to invoke the jurisdiction of the court if he has, in an individual or representative capacity, some real interest in the subject matter of the action).

■ Fifth, the City argues that Plaintiffs have failed to adequately allege state tort law claims against the Defendants (doc. 46). Plaintiffs state a claim for wrongful death under Ohio law, which Defendants apparently argue requires a showing that Defendant Roach's shooting of Thomas constituted "wanton misconduct" meaning "the failure to exercise any care whatsoever" (doc. 49). Plaintiffs argue that such a claim can be grounded upon action taken "in reckless disregard of the safety of others if ... such risk is substantially greater than that which is necessary to make his conduct negligent" (doc. 48) (*citing Ewolski v. City of Brunswick,* 287 F.3d 492, 517 (6th Cir.2002) (*quoting Fabrey v. McDonald Village Police Dept.,* 70 Ohio St.3d 351, 639 N.E.2d 31 (1994))). The Court finds that taken in the light most favorable to Plaintiffs, the allegations that Defendant Roach pursued Thomas with his gun drawn and his finger on the trigger could meet the standard of reckless disregard necessary to preserve Plaintiffs' wrongful death claim.

Sixth, Defendant City argues that both the City and Defendant Roach have statutory immunity from suit under Ohio's sovereign immunity statute, Ohio Revised Code Chapter 2744 for the alleged state tort claims (doc. 46). Plaintiffs did not address the issue. The Court finds that the Ohio Supreme Court's recent ruling in *Butler v. Cuyahoga County Department of Human Services,* 92 Ohio St.3d 354, 750 N.E.2d 554 (2001) may throw into question the constitutionality of municipality sovereign immunity. The Court withholds ruling on this issue at this time, and requests further briefing from the parties on their views of *Butler.*

Seventh, Defendant City argues that the Court should decline to exercise jurisdiction over the pendent state law claims. The Court finds that such proposed dismissal of pendent claims lacks justification in this case.

Finally, Defendants argue that Plaintiffs' Motion for a Continuance should be denied (doc. 46). Plaintiffs Motion, included as a part of their response to Defendants' Motion to Dismiss, requests that the Court convert Defendants' Motion to Dismiss into a Motion for Summary Judgment pursuant to Fed. R. Civ. 12(b) and grant a continuance based on Rule 56(f) based upon Defendants' inclusion of "extensive evidentiary materials outside the pleadings" (doc. 48). Defendants respond, citing *Kostrzewa v. City of Troy,* 247 F.3d 633, 644 (6th Cir.2001), that they only affixed matters of public record, and that as such, the Court is not required to convert a their motion to dismiss into a motion for summary judgment (doc. 49). Defendants argue that they are entitled to a timely ruling on their motion to dismiss (*Id.*). Having reviewed this matter, the Court finds that as this case not only affects the parties, but also affects the larger community of Cincinnati, it is in the interests of

justice to rule on Defendants' Motion to Dismiss at this time, in order to avoid all unnecessary delay to every extent possible. Consequently, under *Kostrzewa,* the Court exercises its discretion to preserve Defendants' Motion as a Motion to Dismiss, and thus denies Plaintiffs' Motion for a Continuance.

## V. Conclusion

The Court finds that Plaintiffs' Second Amended Complaint adequately alleges that Defendants deprived Timothy Thomas of his Fourth Amendment right to be free of excessive force, and of his Fourteenth Amendment rights to substantive due process and equal protection. Because a reasonable officer would have known that it violated the principles of *Garner* to pursue a fleeing suspect allegedly with a firearm drawn and a finger on the trigger, Defendant Roach is not entitled to qualified immunity.

The Court further finds that Plaintiffs' Second Amended Complaint adequately alleges facts supporting a wrongful death claim under Ohio law. The Court does not find well-taken Defendants' argument that Plaintiffs lack standing, or that Plaintiffs' Second Amended Complaint contains allegations so insufficient or immaterial so as to justify a Motion to Strike. In summary, the Court rejects the bulk of Defendants' arguments, with the exception of their arguments concerning Plaintiffs' proposed conversion of their Motion to Dismiss into a Motion for Summary Judgment. Additionally, the Court withholds judgment on Defendants' invocation of the Ohio sovereign immunity statute, Ohio Revised Code Chapter 2744, pending further briefing by the parties on the statute's constitutionality in light of the *Butler* decision. Finally, the Court again wishes to make explicitly clear that as Defendants' Motion is a motion to dismiss, the Court's taking of Plaintiffs' allegations as true at this point does not mean that the Court is accepting such allegations as established.

Accordingly, the Court DENIES Defendants' Motion to Dismiss Second Amended Complaint, Motion to Strike, and Motion for More Definite Statement (doc. 46) and DENIES qualified immunity for Defendant Roach (*Id.*). The Court further DENIES Plaintiffs' Motion for Continuance to Permit Discovery Pursuant to Rule 56(f) (doc. 48). Finally, the Court ORDERS the parties to submit briefs advising the Court as to their positions in regard to the effect of the Ohio Supreme Court's *Butler* decision on the question of municipality sovereign immunity, Defendants' brief to be filed within thirty (30) days of this Order, and Plaintiffs' response within thirty (30) days thereafter.

SO ORDERED.